## Noyes *against* Ward.

Where a by-law of the city of *Norwich,* after providing for the appointment of four highway surveyors, one of whom should reside in one of the four districts into which the city was divided, and that they should constitute a permanent board of commissioners, having the general direction of all matters relative to the highways, streets and side-walks in said city, declared, that each surveyor, in the district in which he resided, should have the particular care and superintendence of all highways, streets and side-walks in said city, and should execute all the directions of the board of commissioners, and of the court of common council respecting the same, and should have full power and authority, each in his district, as surveyors of highways, to make, maintain and keep in repair, all highways and streets in said city, subject to such directions as might be given, by the board of city commissioners, and under such regulations and directions as the court of common council might, from time to time, prescribe; it was held, 1. that the power of these surveyors, was not derived from the board of commissioners, or the court of common council, but was conferred by the by-law; 2. that though those boards had a controuling power, by direction or regulation, when they thought proper to interfere, yet no specific direction or regulation, by either board, was necessary to enable the surveyors to perform their official duty of making and keeping in repair the highways and streets in their respective districts. [The Chief Justice dissenting.]

The powers and duties of such surveyors, in regard to highways and streets, extend to side-walks, the latter being embraced in the former.

Where it appeared, in an action of assault and battery, that there had been a former trial of the cause, and by reason of the death of one of the jurors, no verdict was rendered; it was held, that the jury might properly take into consideration the expenses of such former trial, in estimating the damages.

A highway may be established, by a dedication of the land, by the owner, to the public, for that purpose.

*New-London,*
July, 1848.

Noyes
*v.*
Ward.

The doctrine of such dedication rests on the principle of the common law, that where a person has made representations, or pursued a line of conduct, with a view to induce others to adopt a particular course of action, and such representations or conduct have produced that effect, they shall be held to be binding and conclusive against him; and he shall not afterwards be permitted to retract or repudiate them, to the injury of those who have been induced thus to act.

The statute prescribing the mode in which highways may be laid out and established, was not designed to take away or abridge the right, which previously existed, of any person to grant or dedicate to the public, by his own act, a right of way over his land, but only to provide a mode by which the public may procure it to be appropriated for such a purpose, without, or even against, his consent.

In order to establish in the public a right to the use of land as a highway, by dedication, it is not requisite that they should have used it as such, for the period of fifteen years, nor that the public use should have been adverse and uninterrupted.

Where a party, having taken up and removed an ancient fence, put down a stone in one of the post-holes, where it remained; and the next day, he declared, that he put it there as a bound; it was held, that this declaration was not so connected with the *act done* as to constitute a part of it; and was, therefore, inadmissible evidence for such party.

Where a party offered in evidence a paper, purporting and appearing to be a map or plan, representing certain lots and highways, surveyed and laid out, by a committee of the proprietors of the land, in *June* 1770; which paper was recently found among the books, papers and records of such proprietors; it was held, that such paper was admissible as evidence of a highway thereon laid down.

THIS was an action of trespass *vi et armis,* alleging an assault upon the plaintiff, beating and wounding him; to which the defendant pleaded the general issue, with notice of special matter in justification.

The cause was tried at *New-London, September* term 1847, before *Storrs,* J.

On the trial, the plaintiff claimed to have proved, that the defendant assaulted and beat him, in the manner alleged in the declaration. He also adduced in evidence the by-laws of the city of *Norwich,* which were admitted to have been approved and published as required by the charter, and to have been in full force at the time of the transaction in question. (*a*) He then offered evidence to prove, and claimed that he

(*a*) As such parts of these by-laws as are material in this case, appear in the opinion of the court, *post,* a particular statement of them is omitted here.

had proved, that before the commission of the acts complained of, he was duly appointed and sworn a commissioner of streets and highways in the city of *Norwich*, and surveyor of highways in the first district in that city, embracing the *locus in quo* ; that the plaintiff, in the discharge of his duties as such commissioner, and by the advice and direction of the mayor of the city, had constructed a side-walk on the *North* side of a highway running *Easterly* and *Westerly*, on each side of which the defendant was the owner of the land in fee; that the plaintiff had constructed such side-walk against the barn-yard, gates and fence of the defendant, making it of the same height and level as against the lands of the adjoining proprietors, and not higher than the public necessity and convenience required ; that after this side-walk was so made, the defendant, claiming that the land was his, and that the public had no right of way there, dug up and removed the earth of the side-walk in front of his gates, and thereby made a cavity therein of such depth as to endanger the persons of travellers thereon ; that in order to protect and save from injury the persons of travellers on such side-walk, the plaintiff was filling up the cavity to the height to which he had so built it, declaring that this was his object ; and that he was acting in his capacity of commissioner, when the defendant committed the alleged assault and battery upon him.

There was no proof that the plaintiff did such acts, under or by virtue of any order of the court of common council, or board of city commissioners of the city ; nor that the side-walk had ever been designated or fixed, by the court of common council, either as to its width, course, height or level.

The defendant claimed to have proved, that when the side-walk was so constructed, and from that time until after the alleged assault and battery was committed, he was the owner in fee, not only of the land adjoining the side-walk on the *North,* but of the land on which the side-walk was made, and denied that it was a part, or within the limits, of any public highway.  He also claimed to have proved, that the side-walk so built by the plaintiff, was made so high against the defendant's gates as to prevent the opening of them, to enable him to pass in and out of his barn-yard, with his cattle or otherwise, and higher than the public convenience and necessity required ; and that in committing the assault and

New-London,
July, 1848.

Noyes
v.
Ward.

battery complained of, the defendant did no more injury to the plaintiff than was necessary to prevent him from filling up said cavity.

The defendant also claimed, that the plaintiff, by virtue of the office to which he had been appointed, had not, under the charter or by-laws of the city, any right or authority, either with or without the order or direction of the mayor of the city, to construct said side-walk on the public highway, within his district, nor to repair it, by filling up said cavity, in the manner he claimed to have done.

The plaintiff, on the other hand, claimed, that, by virtue of his office, he had a right and authority, under the charter and by-laws, to build, maintain and keep in repair such side-walks as the public convenience and necessity required in the public highway within said district, and to remove all nuisances from the highways and side-walks therein, without any order or direction so to do, either from the mayor or court of common council, or board of commissioners of the city; and that if the plaintiff, having been duly appointed to said office, had built said side-walk, within the limits of an open and public highway, within his district, and the side-walk so built by the plaintiff was required by public convenience and necessity, he had a right to build the same, and also to maintain it and keep it in repair, and to remove all nuisances therefrom; that if said cavity rendered the side-walk impassable, or dangerous to travellers thereon, he had a right to fill it up, and restore the side-walk to its former condition; and that the defendant, consequently, would not be justified in resisting the plaintiff in so doing.

Each of the parties requested the court to charge the jury in conformity to their respective claims.

The court charged the jury as requested by the plaintiff; and further instructed them, that if the side-walk, as built by the plaintiff, was not such as the public convenience and necessity required, he had no right to build or repair the same, as he claimed to have done; and that, in that case, the defendant would be justified in preventing him from so doing, by the use of as much force as would be necessary for that purpose.

It appeared, that a previous trial of this cause had been had, at its term in *March* 1847; and that, after the taking in

of the evidence, and before the argument of the cause, one of the jurors died, in consequence of which, the trial proceeded no further ; and no verdict was rendered. The plaintiff now claimed, that the expenses of that trial might be considered by the jury, in their estimate of the damages in this action, if the plaintiff should recover ; to which the defendant objected : but the court instructed the jury, that they might consider the expenses of such former trial, in their estimate of damages ; but no bill of the expenses, nor estimate of the amount thereof, was proved, or laid before the jury.

The parties were at variance, on the question whether the land on which said side-walk was built, in front of the defendant's gates, was public highway.

The plaintiff claimed, that there was, over said land, an ancient public highway, which adjoined said side-walk on the *South*, and extended so far *North* as to embrace and cover the whole width of the side-walk at that place.

The defendant claimed, that if there was any ancient public highway, on the *South* of said side-walk, it did not extend over or embrace any part of said side-walk.

There was no formal or legal laying-out of any highway adduced in evidence, on the trial ; but the existence and extent of such highway were claimed by the plaintiff to be proved, by parol evidence adduced by him, showing a dedication thereof, for the purpose of such highway, by the owners of the land over which it was claimed to run.

The defendant claimed to have proved, that in the year 1826, and before, there was an ancient fence, running on the *North* side, and constituting the *North* boundary of the highway, in which, as the plaintiff claimed, said side-walk was made, between such highway and the defendant's land, and extending from the *South-West* corner of the defendant's land on the *North* side of the highway, further *Easterly* than the side-walk against said gates where the alleged assault and battery was committed ; that in the spring of 1826, the defendant took down and removed said fence, and built a new fence, which is the one now existing, about three feet *North* of the line of such ancient fence, the whole of the distance aforesaid, leaving a strip of the defendant's land between the line of such ancient fence and the new fence ; that this strip was so left by the defendant, not for public use, but for his

own accommodation only ; and that he so declared, at the <span style="float:right">*New-London,*<br>*July, 1848.*</span>
time when he built the new fence ; that he continued, down
to the time when said side-walk was built, to occupy said <span style="float:right">Noyes<br>*v.*<br>Ward.</span>
strip of land, with his carts, lumber, wood, stone and other
things ; that the side-walk was constructed wholly upon said
strip of land ; that when the defendant removed the ancient
fence, he caused a stone to be buried in the ground in the
post-hole, at the *West* end of the ancient fence, which was
the *South-West* corner of his land ; and that this stone has
ever since been, and now is, where it was then placed.

The plaintiff claimed to have proved, that the new fence
was not put *North* of the line of the ancient fence, as claim-
ed by the defendant ; but that the ancient fence, before it was
taken down, stood *North* of the line of the new fence ; and
that when the defendant built the new fence, he drew in the
line of it on the highway ; that from time immemorial, the
highway, on the *North* side of it, where the defendant built
the new fence, was broader than it has since been, and thus
the defendant encroached on the highway ; that the land, ad-
joining and *South* of the new fence, on which said side-walk
was built, against the defendant's barn yard and gate, was
never encumbered and occupied by him, as he claimed, but
was always open, and used for public travel ; or, if ever so
encumbered or occupied, that the encumbrances thereon
were removed therefrom, by the public officers of the city ;
and that if the new fence was placed, by the defendant, as he
claimed, *North* of the line of the ancient fence, he had dedi-
cated the land, between the new fence and the line of the
ancient fence, to the public, for the purpose of a public high-
way.

The defendant claimed, and requested the court to charge
the jury, that under the evidence respecting said strip of land,
the law was so, that if the defendant owned it, and it lay to
the *North* of the ancient fence, he could not be deemed to
have dedicated it, or intended to dedicate it, to the use of the
public, as highway.

The court did not so charge the jury, but instructed them,
that they must find whether the place on the side-walk where
the assault was committed, was, or was not, public highway ;
that it was not necessary, in order to constitute such a high-
way, that there should be a legal or formal laying-out thereof

on record ; that it was competent for the proprietors of land, to dedicate it to the public, for their use as a highway; and that when this was done by them, it thereby became devoted to the use of the public, for that purpose, and was a legal and valid highway; that whether a place is highway by dedication, is a question of *intention*, to be proved, by the facts and circumstances of the case; that the continued and uninterrupted use of land, by the public, as and for the purpose of a highway, for the period of fifteen years, is sufficient evidence that it has been dedicated to such use, by the owner thereof, and that it is a public highway; that the mere use, however, by the public, of land as highway, for any period short of fifteen years, would not be sufficient evidence of such a dedication; but that if, in addition to the circumstance, that the public had used land as and for a public highway, there was unequivocal proof that the owner of it intended to dedicate it to the public, for that purpose, a less time than fifteen years would be sufficient; that in case of such proof, no particular period of time, during which the land must be used by the public, for such purpose, is necessary or required; and that in some cases, such use, for the period of six years, accompanied by such proof, had been held sufficient. And the court left it for the jury to find, on the evidence adduced by the parties, whether the place on said side-walk where the assault was committed, had been, and then was, public highway by dedication.

The defendant offered to prove, by a witness introduced by him, that on the next day after he caused the aforesaid stone to be buried by him in the ground, he, the defendant, stated to the witness, that he caused it to be so placed there, as a bound of his land.

To this testimony the plaintiff objected; and the court ruled it to be inadmissible, and excluded it.

In the course of the trial, the plaintiff claimed, that said ancient highway extended *Easterly* from the *locus in quo*, the distance of several rods, to a ferry and landing-place, at a river there; and that it was, for the whole distance from such ferry and landing-place to the *locus in quo*, and still further *West*, of the width of two rods; and that it, therefore, embraced and extended over the whole of the side-walk against the defendant's land. For the purpose of proving the existence of said highway, and the location, width and extent

thereof, the plaintiff offered in evidence a paper, purporting and appearing to be an ancient map or plan, representing a number of lots and highways on the flats, at said river, as surveyed and laid out, by the committee of the proprietors of said flats, on the 25th day of *June* 1770 ; (which flats, it was conceded by the parties, lay *Easterly* and *North-Easterly* from said ferry and landing-place, and the *locus in quo*,) on which paper was laid down as highway, on the *Westerly* side of said river, said ancient highway, claimed by the plaintiff to embrace and cover said side-walk, extending to said river. This paper was accompanied with the testimony of a witness offered by the plaintiff, that it was found by him recently, among the books, papers and records of the proprietors of said flats.

To the admission of such paper in evidence, and of the testimony regarding it, the defendant objected ; but the court overruled the objection, and admitted the evidence.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial.

*Hill* and *C. F. Cleveland,* (with whom was *Waite* also,) in support of the motion, contended, 1. That the plaintiff, as surveyor of highways in the city of *Norwich*, had not, by virtue of his office, under the charter or by-laws of the city, either with or without the order of the mayor, any right, power or authority to construct or repair a side-walk, within the limits of his district. *Amended charter* of 1836. *sec.* 3. Even if such power is given to surveyors, by the by-law of 1843, it is not given to them individually, but to them collectively, as a " permanent board ;" and they only have " the general direction of all matters relative to the highways, streets and side-walks," when they act as a body. An individual surveyor can only execute " the directions of the board of city commissioners, and of the court of common council, respecting the same." *By-law of July* 14th, 1843, *sec.* 2. 3. He has only authority, in this capacity, to repair highways, under the direction of the board of city commissioners, and subject to such regulations, as the court of common council shall prescribe. *Sec.* 3. Even if the cavity in question was a nuisance, it could only have been removed by the plaintiff, under the orders of the board of city commis-

sioners. *Sec.* 2. If then, the plaintiff had not the right *virtute officii*, to build the side-walk, or remove what was claimed to be a nuisance, in front of the defendant's premises, the defendant would be justified in preventing him from so doing, by the use of all the force necessary to effect that purpose. 1 *Sw. Dig.* 642. *Commonwealth* v. *Kennard*, 8 *Pick.* 133. *Commonwealth* v. *Clark*, 2 *Metc.* 23. *Weaver* v. *Bush*, 8 *Term R.* 78.

2. That the charge of the judge to the jury, that in estimating damages, they might consider the expenses incurred by the plaintiff, in a former trial of the cause, without any estimate being made or items furnished of the amount of such expenses, was clearly erroneous. The jury having no means of ascertaining the amount of such expenses, were liable to do gross injustice to the defendant. If the plaintiff claimed any such instruction from the court, he should have furnished correct *data ;* and it was improper for the judge so to charge, unless the *data* were furnished. *Sterling* v. *Adams*, 3 *Day's R.* 111. *Guild* v. *Guild*, 2 *Metc.* 229.

3. That the declarations of the defendant in 1826, when he removed an old fence and erected a new one, thereby throwing out of his enclosure the strip of land where the side-walk in question was laid, that he threw out that strip of land, not for public use, but for his own accommodation ; and also his declaration, immediately after sinking a stone in a post-hole of the old fence, that he placed it there as a monument, to show that he meant to hold the land out to the original line—were declarations accompanying and explaining acts, and as such, constituted a part of the *res gestæ ;* and the court should have instructed the jury, that such declarations furnished proof that the defendant had never dedicated, or intended to dedicate, said strip of land to the public. 1 *Sw. Dig.* 763. 1 *Stark. Evid.* 57. 1 *Phil. Evid.* 202. *Merrill* v. *Meacham*, 5 *Day's R.* 341. *Phelps* v. *Foote*, 1 *Conn. R.* 387. *Cook* v. *Swan*, 5 *Conn. R.* 140. *Wooden* v. *Cowles'* exr. 11 *Conn. R.* 292. *Deming* v. *Carrington*, 12 *Conn. R* 1. *Poole* v. *Bridges*, 4 *Pick.* 378. *New-England Marine Insurance Company* v. *De Wolf*, 8 *Pick.* 56. *Merrill* v. *Sawyer*, *Id.* 397. *Allen* v. *Duncan*, 11 *Pick.* 308. *Boyden* v. *Moore*, *Id.* 362. *Van Deusen* v. *Turner*, 12 *Pick.* 532. *Thorndike* v. *Boston*, 1 *Metc.* 242. *Kilburn* v. *Ben-*

New-London,
July, 1848.

Noyes
v.
Ward.

*nett*, 3 *Metc.* 199.    *Hoare* v. *Allen*, 3 *Esp. R.* 276.    *Aveson* v. *Kinnaird*, 6 *East* 193.    *Fellowes* v. *Williamson*, 1 *Moo. & Malk.* 306. (22 *E. C. L.* 316.)    *Bennett* v. *Heathington*, 16 *Serg. & R.* 193.    *Tompkins* v. *Saltmarsh*, 14 *Serg. & R.* 275.    *Little* v. *Libby*, 2 *Greenl. R.* 242.    *Rosc. Cr. Ev.* 20. 21.

4. That to constitute this a public highway, it should have been legally and formally laid out, in the manner prescribed by the statute.    *Stat.* 339. *tit.* 49. *sec.* 11, 12.    *Hinckly* v. *Hastings*, 2 *Pick.* 162.    *Commonwealth* v. *Low*, 3 *Pick.* 408. 412.    *Jones* v. *Andover*, 9 *Pick.* 146.

5. That if a public highway can be had by dedication, yet the mere use of land, by the public, as a highway, for a less period than fifteen years, does not furnish evidence of a dedication of the land to the public, by the owner, for such highway; but the use must be adverse, uninterrupted and unexplained, for the period of twenty years in *England*, and fifteen years in this state, by analogy to their and our statutes limiting the right of entry on land for that period.    The same rule governs the acquisition, both of public and private ways. The principle is the same as that conferring a right to the use of water, and the enjoyment of ancient lights.    1 *Sw. Dig.* 105. 158, 9. 160, 1.    *Chalker* v. *Dickinson*, 1 *Conn. R.* 382. *Ingraham* v. *Hutchinson*, 2 *Conn. R.* 584.    *Watrous* v. *Watrous*, 3 *Conn. R.* 273.    *King* v. *Tiffany*, 9 *Conn. R.* 162.    *Buddington* v. *Bradley*, 10 *Conn. R.* 213.    *Tucker* v. *Jewett*, 11 *Conn. R.* 312.    *Gayetty* v. *Bethune*, 14 *Mass. R.* 49.    *First Parish in Gloucester* v. *Beach*, 2 *Pick.* 60. *Hinckley* v. *Hastings*, *Id.* 162.    *Odiorne* v. *Wade*, 5 *Pick.* 421.    *Kent* v. *Waite*, 10 *Pick.* 138.    *Reed* v. *Northfield*, 13 *Pick.* 95.    *Williams* v. *Cunningham*, 18 *Pick.* 312.    *Stetson* v. *Faxon*, 19 *Pick.* 147.    *Valentine* v. *Benton*, 22 *Pick.* 75. *Livett* v. *Wilson*, 3 *Bing.* 115. (11 *E. C. L.* 57.)    *Cincinnati* v. *White*, 6 *Peters*, 631.    *Pomeroy* v. *Mills*, 3 *Verm. R.* 279. *Abbott* v. *Mills*, *Id.* 521.    *State* v. *Catlin*, *Id.* 530.    *Pritchard* v. *Atkinson*, 4 *N. Hamp.* 1.    *Todd* v. *Rome*, 2 *Greenl. R.* 55.    *Rowell* v. *Montville*, 4 *Greenl. R.* 270.    *Estes* v. *Troy*, 5 *Greenl. R.* 368.    *Jackson* d. *Parker* v. *Phillips*, 9 *Cowen*, 94.

6. That the map or survey of certain lots and highways on the flats adjoining the premises where the side-walk was erected and the assault committed, was inadmissible to con-

troul the boundaries of the defendant's premises, or in any other way to affect his rights. *Jackson* d. *Ten Eyck* v. *Frost,* 5 *Cowen,* 346

*Strong* and *G. Perkins,* contra, contended, 1. That a surveyor of highways in the city of *Norwich,* is competent, without advice from any source, to make, maintain and keep in repair all highways, streets and side-walks, within his district, and to remove nuisances therein. *By-law* of *July* 14th, 1843, *sec.* 2, 3. Such power results, necessarily, from the nature of his duties. It is substantially the same as that conferred on surveyors of highways in towns. *Stat.* 344. (ed. 1838.)

2. That the jury had a right to consider the expenses of the former trial, in which a verdict failed to be rendered, in consequence of the death of a juror. This occurred by the providence of God, and not by any fault of the plaintiff. It is common, in actions of this kind, for the jury to consider the expense to which the injured party is subjected in obtaining redress. The circumstances of the case would justify, if not require, *vindictive* damages ; but all which the judge directed, with reference to the former trial, was only for *compensatory* damages. *Linsley* v. *Bushnell,* 15 *Conn. R.* 236, 7.

3. That the court was correct, in the charge respecting a highway by dedication. The jury were instructed, that whether a place is highway by dedication, is a question of *intention,* to be proved by the facts and circumstances of the case ; that continued and uninterrupted use, by the public, for fifteen years, was sufficient proof of dedication ; and that the intent being unequivocally proved, even a less period of time, was sufficient. *Cincinnati* v. *White,* 6 *Peters,* 439. 440. *Hobbs* v. *Lowell,* 19 *Pick.* 405. 409. 2 *Greenl Ev.* § 662. and notes. *State* v. *Catlin,* 3 *Verm. R.* 530. *Cleveland* v. *Cleveland,* 12 *Wend.* 172.

4. That the declaration of the defendant to some one, that he placed a certain stone in the highway, to show the bound of his land, made the day after the stone was claimed to have been placed there, was not admissible. It was no part of the *res gestæ,* as it did not accompany the alleged act. If admissible, any similar declaration made by him, at any time

since, would be admissible. *Merrill* v *Sawyer,* 8 *Pick.* 397.

*Haynes* v. *Rutter,* 24 *Pick.* 242.

5. That the map or plan mentioned in the motion, being found in the records of the proprietors of the town of *Norwich,* bearing date *June* 25th, 1770, was properly admitted, as evidence by reputation of the existence of the highway in question, at that time. The antiquity of the plan, and the place where it was found, prove its genuineness. If the parol declarations of individuals, at such a remote period, are admissible, much more are written statements and plans, regarding highways, placed in the records of public bodies, whose special province it was to keep such documents. 1 *Sw. Dig.* 764. *Tolman* v. *Emerson,* 4 *Pick.* 160. 163. 1 *Stark. Ev.* 66. 67. 3 *Stark. Ev.* 1207. 1 *Greenl. Ev. sec.* 128. 139. But even if the plan was not admissible, yet, as the existence of the highway in 1770, was clearly proved, by other testimony, a new trial will not be granted. *Prince* v. *Shepard,* 9 *Pick.* 176. 183. *Hoyt* v. *Dimon,* 5 *Day's R.* 479.

STORRS, J. The several questions in this case will be considered in the order in which they are presented by the motion.

1. The defendant does not question the validity, either of the appointment of the plaintiff, as a surveyor of highways, or of the by-law under which the latter justified the making and repairing of the side-walk where the assault complained of was committed, and which was admitted to be within his district. That by-law, after providing, that there should be annually appointed, by the court of common council of the city of *Norwich,* four highway surveyors, who should be resident, one in each of the four districts into which said city had been in said by-law divided, and that they should constitute a board of city commissioners, whose duty it should be to examine and remove all nuisances, encroachments, and incumbrances, upon the streets and highways in said city, and cause to be executed all the provisions of the charter and by-laws of said city, relative to the prevention and removal of such nuisances, encroachments and incumbrances, further provides, that said commissioners shall constitute a permanent board, which shall

*New-London,*
July, 1848.

Noyes
*v.*
Ward.

have the general direction of all matters relative to the highways, streets and side-walks in said city; and that the said highway surveyors, each in the district in which he resides, shall have the particular care and superintendence of all highways, streets and side-walks, in said city, and shall execute all the directions of the board of commissioners and of the court of common council respecting the same; and that they shall have full power and authority, each in his district, as surveyors of highways, to make, maintain and keep in repair, all highways and streets in said city, subject to such direction as may be given, by the board of city commissioners, and under such regulations and directions as the court of common council may, from time to time, prescribe. It is insisted, that, under this by-law, the several surveyors of highways have no power to do any act whatever for the purpose of maintaining or keeping in repair the highways in their respective districts, without the direction of the board of commissioners, or some regulation or direction of the court of common council, authorizing such act. We think that this is not its true construction. These highway surveyors are made subordinate to those bodies, in this respect, that they must execute all the directions that they deem it proper to give, in relation to the highways, streets and side-walks. Their power, however, as such officers, is not derived from those bodies, but is conferred by the by-law; and that power is to make, maintain, and keep in repair, all highways and streets in their respective districts. The preceding clause, providing that they shall do this, subject to such directions and regulations as those boards may give or prescribe, is merely a restriction upon the powers which had been given to these officers, in the same sentence; the effect of which is, not to make either of those boards the source of the power of such highway surveyors, or to require that there should be a direction from either of those boards before they should have any authority to act, but only to take from them their independent power of judging, in the execution of their duty, in those cases where either of those boards had deemed it proper to give directions. We do not think that it was intended, by this by-law, to constitute any difference between the surveyors of highways, who should be appointed under that by-law, and those appointed by towns under the general law of the state, as to their powers, except-

New-London,
July, 1848.

Noyes.
*v.*
Ward.

ing that the former were intended to be subject to be controuled by the boards of city officers mentioned in such by-law, whereas the latter are subject to the controul of the town. The general law does not define the particular powers of the highway surveyors appointed by the towns, excepting as they are derived from their name, in connexion with the powers given to towns in relation to the making, maintaining, and repairing of highways; but the powers of such highway surveyors are precisely the same as those expressly given in this by-law to the highway surveyors of this city, with the difference only, that they are respectively liable to be controuled by the bodies by whom they are appointed. *Stat. tit.* 49. *sect.* 17.

It has never been understood, that the highway surveyors of towns have no authority to act in the duties of their office, without a particular direction or regulation of the towns appointing them; and the inconvenience and injury, which might result from requiring such officers, in every case, where a highway is out of repair, to seek and obtain the particular direction of the town or city by whom they are appointed, before it could be put in order, constitutes a conclusive reason against such a construction of their powers as the defendant claims. The acts of the plaintiff, therefore, in relation to the side-walk in question, were not unauthorized, in consequence of no directions having been given to him in regard to it, by the board of city commissioners, or the court of common council, unless, as the defendant further claims, his authority, as a surveyor of highways, extended only to the other parts of the road. The streets and highways, however, embrace the side-walks, no less than the other portions of the road; and unless these officers are restrained from exercising their powers over the former, by some particular provision of the charter or by-laws, we cannot perceive why it does not equally extend over both. If public necessity and convenience require, that there should be side-walks for the accommodation or safety of foot passengers, the same reasons exist why they should be made and kept in repair, as apply to the more central parts of the highway. But it is to be observed, that, in the third section of the by-law which has been mentioned, it is provided expressly, that "the said highway surveyors, each in the district in which he resides, shall have the particular

care and superintendence of all highways, streets and *side-walks*" in said city ; and by that section, he is required to execute all the directions of the board of city commissioners, and of the court of common council, respecting *the same*. Then succeeds the provision that they shall have full power and authority, in their respective districts, as surveyors of highways, to make, maintain, and keep in repair, all highways and streets therein, subject to the direction and regulation of said boards ; thereby implying most strongly, that it was the design of that by-law, that the authority of these officers should extend equally to the side-walks and other parts of the highway. Nor do we think, as the defendant insists, that their general powers are abridged, by the third section of the amended charter of said city, which confers upon the court of common council " power and authority, from time to time, as public convenience may require, to designate and fix the width, course, height, and level of all side-walks and gutters in and upon the streets and highways in said city." That section authorizes that body to exercise the controul provided in that section over the surveyors of highways in regard to the construction of side-walks, but does not otherwise affect their general powers as such officers.

If, therefore, the side-walk in question was such as the public convenience and necessity required, as the jury have found, a majority of the court are of opinion, that the plaintiff had a right to build and repair it, as he claimed to have done ; and that the charge on this point was correct.

2. The instruction to the jury, that they might consider the expenses of the former trial, in their estimate of the damages, is sanctioned by the case of *Linsley* v. *Bushnell*, 15 *Conn. R.* 236. where the rule on this subject was fully considered and settled.

3. The next point respects the charge of the court below, on the subject of the right of the public to the use of land as a highway, by what is termed a dedication of it, by the owner, for that purpose.

The defendant has suggested, rather than argued, before us, that the public cannot acquire a right to use the land of an individual for that purpose, in that mode ; but that they must take the steps prescribed by the statutes relating to the laying out of highways. This court has never had this point brought

directly before it for adjudication; and therefore, has never

formally decided it. This is explainable only on the ground
that it was not susceptible of a question. Numerous cases
have been tried at the circuit, which depended on the right of
the public to acquire the use of land for that, as well as other,
purposes, by dedication, in which such right was uniformly
conceded; and it is not credible that it would not have been
questioned in this court, if it could have been, with the least
expectation of success. That property may be effectually
dedicated, by the owner, to public uses, and to this particular
use, as well as any other, admits, in our opinion, of no doubt.
We consider this principle as too long and too well settled, by
the authorities in the *English* courts, in those of several of
the states of this *Union,* and in the supreme court of the *Uni-
ted States,* to require us, at this time, particularly to examine
them, or the reasoning on which they are founded. A refer-
ence only to some of the adjudged cases on this subject, is
deemed necessary. *Lade* v. *Shepherd,* 2 *Stra.* 1004. *Rex*
v. *Lloyd,* 1 *Campb.* 260. *Rugby Charity* v. *Meriwether,* 11
*East,* 376. *Stafford* v. *Coyney,* 7 *B. & C.* 257. (14 *E. C.
L.* 39.) *Jarvis* v. *Dean,* 3 *Bing.* 447. (13 *E. C. L.* 45.)
*Woodyer,* v. *Hadden,* 5 *Taunt.* 137. *Cincinnati* v. *White,*
6 *Peters,* 431. *Hobbs* v. *Lowell,* 19 *Pick.* 405. *Abbot* v.
*Mills,* 3 *Verm.* 519. *State* v. *Catlin, Id.* 530. *State* v.
*Trask,* 6 *Verm.* 355. *Bryant's* lessee v. *McCandless,* 7
*Ham. pt.* 2. 135. *New Orleans* v. *United States,* 10 *Peters,*
662. *Olcott* v. *Banfill,* 4 *N. Hamp.* 537. *Rung* v. *Shœn-
burger,* 2 *Watts,*23. *Commonwealth* v. *Alburger,* 1 *Whart.*
469. *Pomeroy* v. *Mills,* 3 *Verm.* 279. *Cleveland* v. *Cleve-
land,* 12 *Wend.* 172. *Rector* v. *Hart,* 8 *Miss.* 448.

This doctrine rests on the intelligible, rational, and whole-
some principle of the common law, that, wherever a person
has made representations, or pursued a line of conduct, with a
view to lead or induce others to adopt a particular course of
action, and such representations or conduct have produced
that effect, they shall be held to be binding and conclusive
against him, and he shall not afterwards be permitted to re-
tract or repudiate them, to the injury of those who have been
induced thus to act. This is a principle of public policy and
good faith—of the greatest importance—and of very general,
if not of universal, application. This rule is thus clearly and

broadly stated, by Mr. *Greenleaf*, in his treatise on *Evidence*, *vol.* 1. § 207. " Admissions, which have been acted upon by others, are conclusive against the party making them, in all cases between him and the person, whose conduct he has thus influenced. It is of no importance, whether they were made in express language to the person himself, or implied from the open and general conduct of the party. For, in the latter case, the implied declaration may be considered as addressed to every one in particular, who may have occasion to act upon it. In such cases, the party is estopped, on grounds of public policy and good faith, from repudiating his own representations." The almost universal extent of this rule may be seen from the cases cited by Mr. *G.*, and also in note 192 of *Cowen & Hill* to 1 *Phill. Evid.* 107. This principle has often been recognized, by this court. *Brown* v. *Wheeler*, 17 *Conn. R.* 345. *Kinney* v. *Farnsworth, Id.* 355. *Roe* v. *Jerome*, 18 *Conn. R.* 138.

Mr. Justice *Thompson*, in giving the opinion of the supreme court of the *United States*, in *Cincinnati* v. The lessee of *White*, 6 *Peters*, 431., where the subject of dedications to public uses is most thoroughly examined and clearly elucidated, speaking of the dedication there in question, which was that of a public common in the city of *Cincinnati*, after having shown, that all dedications of land to such uses, rest upon the same principle as the one which is applicable to dedications of public highways, says : " After being thus set apart for public use and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel *in pais*, which precludes the original owner from revoking such dedication. It is a violation of good faith to the public and to those who have acquired private property, with a view to the enjoyment of the use thus publicly granted." The courts have uniformly considered this as the ground on which the right by dedication rests. 2 *Greenl. Ev.* § 662. *Hobbs* v. *Lowell*, 19 *Pick.* 405., and cases before cited.

This being the principle on which dedications of land for public highways are sanctioned and enforced, it is obvious, that they are not affected, by the statutes which prescribe the mode in which such highways may be laid out and established. Those statutes were not designed to take away or abridge the

right which previously existed, of any person to grant or ded- *New-London,* July, 1848.
icate to the public, by his own act, a right of way over his
land; but only to provide a mode, by which the public may Noyes *v.* Ward.
procure it to be appropriated for such a purpose, without or
even against his consent.

The defendant, however, further claims, that, in order to
establish in the public a right to the use of land as a highway,
by dedication, it is requisite that they should have used it as
such, adversely and uninterruptedly, and also for the period
of fifteen years. This claim proceeds on the supposition, that
the title by dedication is founded on the presumption of a
grant; and that such presumption arises, in this case, as in
other cases of incorporeal rights growing out of long posses-
sion, only after an adverse and uninterrupted enjoyment, and
that for the period in this state, of fifteen years, in analogy to
the statute limiting the right of entry on lands of which the
owner is disseised. This, however, is an entire misapprehen-
sion as to the nature of the title by dedication, as is obvious
from the explanation already given of the ground on which it
rests. A dedication, as such, is not held binding, because it
is presumed that there was ever a formal grant, by the owner
of the land; nor because the enjoyment of it, by the public,
is considered as evidence of such a grant. 2 *Greenl. Ev.* §
662. *Woodyer* v. *Hadden*, 5 *Taunt.* 126. The enjoyment
by the public, is not viewed as furnishing evidence of the ac-
quisition by them of the right of such enjoyment, in any par-
ticular mode. *Cincinnati* v. *White*, 6 *Peters* 431. If that
were the ground on which it is placed, there would perhaps
be a serious difficulty in recognizing the acquisition of such a
title, excepting by an enjoyment in the manner and for the
time suggested by the defendant. But the acquisition, as be-
fore stated, proceeds on a different principle, namely, that the
owner, after having permitted the public to use his land for
the purpose for which it is claimed to have been dedicated,
under such circumstances that the public accommodation and
private rights, supposed to be acquired in consequence of such
permission, might be injuriously affected, by an interruption
of such enjoyment, is held to be precluded from denying that
the public have acquired a right to such use in whatever man-
ner, on the ground that such denial would be, on his part, a
violation of good faith. This doctrine, so far from proceeding

on the ground that such enjoyment was adverse and in hostility to the rights of the owner, supposes that it was with his assent. It has accordingly been uniformly held, that, where a title by dedication is set up, the use by the public must be shown to have been with the assent of the owner of the land. For, without evidence of such assent, it would not appear that it was the intention of the owner that his land should be devoted to that use ; and, independently of such an intention, he certainly should not be precluded, on principles of justice, from re-asserting his original rights in the land. Hence, the question in such cases, is, always, as to the intention of the owner in permitting the public to use his land for the purpose for which it is claimed to have been dedicated. 6 *Peters,* 431., and cases before cited.

It is very evident, from these views, and the doctrine on which the title by dedication rests, that it does not depend upon the length of time for which the public has had the enjoyment of the land. The length of such enjoyment is a circumstance, which constitutes proper, and usually very important, evidence, from which the assent and intention of the owner may be inferred ; and it may also tend to show whether the accommodation of the public and the rights of individuals might be injuriously affected, by an interruption of the use ; but when it is shown, that the owner of the property has devoted it to the use of the public, by laying or leaving it out for that purpose, and that these consequences would result to the public and to individuals from such interruption, the question, whether he ought to be permitted to reclaim his original rights in the land, should not depend on whether he has permitted the public to use it for a longer or shorter period of time. Hence, it has also been uniformly decided, that the right of the public, in these cases, does not depend upon any particular length of possession. 2 *Greenl. Ev.* § 662., and cases before cited. *Denning* v. *Roome,* 6 *Wend.* 551. *State* v. *Marble,* 4 *Iredell,* 318. 1 *Hill,* 189–191. 9 *Wend.* 128.

This view of the subject furnishes an explanation of what is meant by the courts, when they speak of the length of time, during which it is necessary that land should be used by the public as a highway, in order to gain a right to it by dedication for that purpose ; and shows, that it was not intended to lay down an absolute rule of law, which required, in every

case, a particular and invariable period of time, during which

there must be such use, in order to acquire such right; but
only, that it should be for such a length of time, that, under
the circumstances, it should satisfy the minds of the triers,
that it was with the assent of the owner of the land, and that
the rights of the public and others would be injuriously affect-
ed, by permitting the owner to resume his original right to
exclude the public therefrom. Each case, in this respect, de-
pends on its own circumstances; and it was only with refer-
ence to the particular cases before them, that the courts have
spoken of the time during which the use of the public had
been permitted to be continued. This explanation reconciles
all the cases on this point, and shows that there is no ground
for the impression, which has sometimes been entertained,
that they are involved in confusion.

We think, therefore, that none of the exceptions to the
charge, on this subject, are valid.

Whether that part of the charge in which the court below,
in deference to what had been before ruled on the circuit,
stated, that the mere use by the public of land as a highway,
for any period short of fifteen years, would not be sufficient
evidence of a dedication of it for that purpose, was not too
favourable to the defendant, we are not called on to decide,
in this case; and therefore, we express no opinion upon it.

4. The declaration of the defendant, as to the intention with
which he deposited the stone in the ground, at what he claimed
to be the *West* end of his ancient fence, did not accompany,
nor was it a part of, that act; nor was it so connected with it
as to characterize or explain it. It was merely a narrative of
the transaction, by the defendant, to the witness, the next day
after it was finished. It was, therefore, properly excluded.
1 *Greenl. Ev.* § 108.

5. Proof of general reputation was admissible, in this case,
for the purpose of showing the existence and extent of the
highway in question. 1 *Greenl. Ev.* § 128. § 139. And, in
our opinion, the map or plan offered by the plaintiff, was
properly received as evidence of that character. It was an
ancient document, purporting to have been made by the com-
mittee, and therefore by the authority, of the ancient proprie-
tors of the lands designated upon it, and was proved to have
been found among the records of the town-clerk, which is the

proper depository of the records and papers of those proprietors; and we think that the authorities justified its admission. *Nichols* v. *Turney*, 15 *Conn. R.* 101.    *Cowen & Hill's* note 477. to 1 *Phill. Ev.* 249.

A new trial is not advised.

In this opinion WAITE, HINMAN and ELLSWORTH, Js., concurred.

CHURCH, Ch. J.    Upon one of the questions discussed in this case, I have not been able to concur with my brethren ; and if it was one of less importance, I should not, in this manner, record my views upon it; but I esteem it to be a question essentially connected with the interests of all our cities.

That the city highway surveyors have power to repair side-walks in the city of *Norwich*, and to remove nuisances, encroachments and obstructions from them, I have no doubt. I find this power expressly given, by the by-laws of the city ; and perhaps this is incidental to their office, if it had not been directly conferred.    But the question which I wish to examine, is, have they an authority, independent of the board of city commissioners and of the court of common council, to locate or lay out side-walks, to determine their width and elevation, and to construct them in such fashion as they may prefer ?    Upon a careful inspection of the charter of this city and its by-laws, I have not discovered this power.

It will be recollected, that it was not the mere act of the plaintiff, as highway surveyor, in repairing the side-walk, which caused this affray: this was connected with his previous act in laying it out, which he had done in opposition to the defendant's will, and without any other guide than his own discretion, and had constructed it in just such a place and manner as he pleased.    If he had no authority to do this, he had no right to repair it, to the injury of the defendant, and was a trespasser in doing so.

For some purposes, side-walks may be deemed to be parts of a highway.    They are within the surveyed limits of the highway, and are intended to accommodate the public travel; but they are not necessary appendages of it, even in cities, much less in country villages.    There are highways in every

*New-London,*
*July, 1848.*

Noyes
*v.*
Ward.

city where side-walks are not considered necessary, and are not constructed. And it is important, in the consideration of this question, to observe, that in this charter and code of by-laws, side-walks are treated as entirely distinct from high-ways and streets, as much so, as the public squares, public greens, public commons and burying-grounds, over which the surveyors have a superintendence ; and when side-walks are intended to be the objects of city legislation, they are, I be-lieve, in every instance, specially named. Therefore, the power given to surveyors to repair highways, does not in-clude the power of laying out and constructing side-walks.

The charter of the city is its constitution, and no by-law or regulation of the city can be valid, which is opposed to the provisions of the charter. The first allusion, which I find, to side-walks in the city of *Norwich*, is in the third and fourth sections of the amended charter of 1836, by which the whole power to lay out or designate side-walks, and fix their width, heighth, course and level, is conferred upon the court of common council. It is an important power, and one which cannot be delegated to individuals acting alone, as mere min-isterial officers, as the surveyors of highways are; nor can it be taken away from the court of common council, by any vote or regulation of a city meeting.

The surveyors of highways, by the by-laws of the city, have the power of general superintendence, direction and repair of side-walks; but this is essentially different from a power to lay them out and fix their width, heighth, course and level. They have the same superintending power over the public squares, greens, commons, and public burial-grounds in the city, which they have, by virtue of the by-laws, over the streets and side-walks ; but it will not be claimed, that they have power to lay out such streets and public grounds, inde-pendently of the board of city commissioners, and of the reg-ulations and directions of the court of common council. See by-law of *July* 14, 1843, sections 2d and 3d.

No by-law has authorized the city highway surveyors to lay out side-walks, or to determine their width, course, heighth and level, as this plaintiff has presumed to do, as I can learn, either from the import of the language used, or from any intention expressed. Such a power would subject every proprietor adjoining a street or highway within the

limits of the city, to serious interruption in his communication with his buildings, grounds and fields, at the will of the surveyor alone, without a hearing, and without a remedy. And therefore it was, that the charter was careful to entrust this authority with the court of common council, a deliberative body, elected by the citizens—the same body which alone had the power to lay out and establish streets, burial-places and public grounds. The by-laws have, indeed, as was very proper, conferred upon the surveyors the authority to repair side-walks, remove nuisances and encroachments from these and all public grounds, and to exercise over them a general superintendence ; and this is all.

I think, therefore, that the plaintiff, in assuming to construct a side-walk in front of the defendant's grounds and buildings, which had not been established by the court of common council, and without their direction, was the aggressor.

New trial not to be granted.