CHARLES WILLIAMS *v.* THE STATE.

1. PRACTICE. — The proper time to except to the charge of the court is at the trial, and before the jury retire, so that the court may have an opportunity of correcting errors or supplying omissions in its charge.
2. EVIDENCE. — Surrounding circumstances constituting parts of the *res gestæ* are competent evidence.   The relation which they bear to the principal fact furnishes the test of their admissibility.
3. SAME — DECLARATIONS AS VERBAL ACTS. — See a state of case in which it was error to exclude proof of declarations made by the accused respecting his purpose in removing property alleged to have been stolen.
4. NEW TRIAL. — When joint defendants sever, if one be convicted and subsequently the other be acquitted, material testimony of the latter is cause for a new trial of the former.
5. THEFT — CHARGE OF THE COURT. — In a trial for theft, the jury should be instructed to acquit, unless they find from the evidence that the property belonged to the alleged owner.

APPEAL from the County Court of Parker.   Tried below before the Hon. B. L. RICHEY, County Judge.

The opinion states the case.

*Shannon & Moran,* and *Watts, Lanham & Roach,* for the appellant.

*W. B. Dunham,* for the State.

Ector, P. J.     An information against Charles Williams and Hugh Williams was filed in the County Court of Parker County, charging them with the theft of 150 pounds of seed-cotton, of the value of $3, the property of D. C. Ray.   The defendants were tried separately. Charles Williams was first tried, and convicted, and his punishment assessed at a fine of $25, and one day's imprisonment in the county jail.   Hugh Williams was subsequently tried, and was acquitted.   Appellant made a motion for a new trial, which was overruled.

One ground for his motion for a new trial was on account of the evidence of his co-defendant, Hugh Williams, who is rendered competent as a witness herein by reason of his acquittal.   The charge of the court was not excepted to at the time, and counsel for appellant say in their brief that the court below, from the bench, announced that the proper time to except to a charge was in a motion for a new trial. The proper time to object to a charge is at the trial, and before the jury have retired, so that if the court has invaded the province of the jury in the charge given, or has not correctly set forth the law applicable to the case, it may be at once pointed out and corrected.

The witness D. C. Ray testified that on Saturday night, a week before the trial, about 150 pounds of seed-cotton, of the value of $3, were stolen from his pen in Parker County, Texas, which he missed on Sunday morning.   That he examined around the pen and found the tracks of two persons, and trailed the same from his pen ; that the tracks were evidently made by the persons who had taken the cot-

ton; that he measured one of the tracks and took a meas-
ure thereof; that he could not get a measure of the other
track.    That outside of his field, about 100 yards from the
fence, in the brush, he found where cotton had been dropped
— locks of cotton; that about half a mile from this point,
near Dick Hood's, he saw other locks of cotton.    This
was on Sunday morning when he made these discoveries.
That Dick Hood came to his house on said Saturday
night; that he went with said Hood and found three sacks
of cotton within about 200 yards of Mrs. Ferrell's house,
where Hugh Williams' cotton-pen was.    *    *    *    That the
next time he saw said sacks was on Monday morning there-
after, when they were in Hugh Williams' cotton-pen.    That
he went with the sheriff to arrest Hugh Williams, who was
found sleeping in the pen, and had slept there the night be-
fore.    *    *    *    The cotton had not been taken out of the
sacks.    *    *    *    That he could not tell whether the cotton
in said sacks was his or not.    That on said Monday morning
he applied the said measure to the foot of Hugh Williams,
and that the same did not suit or correspond with it, and
that it was readily apparent from an inspection of Charles
Williams' foot that it would not correspond with his.

There is nothing in the evidence tending to show that
appellant was present, or participated in the original taking
of the cotton.    Dick Hood swears that he met two parties
Saturday night; that they had two sacks of cotton each;
that this was about half-past ten o'clock; that the moon
was shining brightly; that he knows Charley Williams well;
that he was in five feet of the parties who had the cotton;
that neither of them was Charles Williams; that they were
too small for Charley.

He further states that he rode rapidly to Mrs. Ferrell's,
getting there in two minutes; and that he called Hugh
Williams, who answered him.    Hugh Williams, as Hood

testifies, was notified by him of the taking of the cotton, after he had seen the parties with the cotton; and on Sunday morning, as it further appears from the evidence, about eight o'clock, Hugh and Charley Williams go down to Owens' house, some 200 yards from where Hugh is staying. Here they meet with the witness Dick Hood, who has a conversation with them about the affair of the night before. Hood tells them where he last saw the parties in possession of the cotton, and about their dropping the sacks of cotton, and indicates to them where they could find the horses' tracks of the parties who had dropped the cotton. That this conversation took place at Owens' house, and that after said conversation Charles and Hugh Williams started and went down in the direction of said horses' tracks, and where the cotton was dropped as indicated and shown them by said witness Hood. Whereupon the counsel for the defendant asked the witness what Charles Williams said in the same conversation, and also if he did not say that he would go down and see if they could find the cotton, and if they could find it, that they would take it home; which questions and answers were objected to on the ground that the defendant could not be allowed to manufacture testimony for himself. The objections were sustained by the court, and the witness was not allowed to answer said questions or state what Charley Williams said when he left the house of Owens to look for the cotton; to which ruling of the court the appellant took a bill of exceptions.

We think that the declarations of appellant, as expressive of his intent to go and look for the cotton, were admissible as part of the *res gestœ*, and as explanatory of his intent. The evidence shows that appellant went with his brother to the cotton-sacks; that they stopped about a minute and a-half at the sacks, and then carried them, in the condition

found, in a direct line to Hugh Williams' pen, where they were found on Monday morning, not emptied out or changed in any manner.

The surrounding circumstances constituting the parts of the *res gestæ* may always be shown to the jury, along with the principal facts ; and their admissibility is determined by the judge, according to the degree of their relation to that fact, and in the exercise of his sound discretion — it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description. "Declarations made at the time of the transaction, and expressive of its character, motive, or object, are regarded as verbal acts indicating a present purpose and intention, and are, therefore, admitted in proof, like any other material facts." 1 Greenl. on Ev., sec. 108.

"When the ascertainment of the motive with which an act is done becomes material, on the trial of the actor, to determine his guilt or innocence, his declarations made at the time the act is done, and expressive of its character or object, are regarded as verbal acts indicating a present purpose and intention, and are admissible as evidence." *Ward* v. *The State*, 41 Texas, 612 ; *Davis* v. *The State*, 3 Texas Ct. App. 91 ; *Gillian* v. *The State*, 3 Texas Ct. App. 132.

Any testimony tending to show that the taking was not fraudulent, nor with intention to steal, or to explain the motive of defendant, was admissible, and we believe the evidence sought to be elicited from the State's witness Dick Hood, on the cross-examination, should have gone to the jury.

The court properly excluded the evidence referred to in the second bill of exceptions taken by defendant. The declarations of the defendant which were made to his sister, Mrs. Ferrell, about finding the cotton, not constituting part of the act done, but explanatory of a previous fact,

are not admissible in evidence in his favor. *Noyes* v. *White*, 19 Conn. 250; *Scraggs* v. *The State*, 8 Smed. & M. 722.

A material question to be determined in this case by the jury, under a proper charge, is, Did the defendant, at the time he took said cotton into his possession, intend to convert it to his own use? Where the finder knows, or has immediate means of knowing, who was the owner, and, instead of returning the goods, converts them to his own use, that such conversion will constitute larceny is consistent with the weight of authority.

It is insisted on the part of the appellant that the court should have granted a new trial, to give him the benefit of the evidence of Hugh Williams, who was jointly charged with appellant, whose acquittal has made him a competent witness for appellant, and whose affidavit is attached to the supplemental motion for a new trial.

Our Supreme Court, in the case of *Lyles* v. *The State*, 41 Texas, 173, says : " The seventh ground of the motion for a new trial — that the acquittal of William Brown and A. Nieto placed defendant in a condition to introduce evidence on a new trial which it was not in his power to use, by reason of their being jointly indicted with accused — and the affidavits of Brown and Nieto attached to the motion, was, we believe, sufficient to warrant the granting of a new trial." The above ruling has been followed by this court in the case of *Huebner* v. *The State*, 3 Texas Ct. App. 458.

Courts of the highest respectability, in some of the American states, have held that a new trial will not be granted on behalf of a defendant convicted in a criminal case because a co-defendant, tried at the same time and acquitted, is a material witness for the convicted defendant.

As this case will be remanded and tried again, we deem it not amiss to call attention to one or two errors in the charge of the court. The second subdivision of the charge

is defective in this : that the jury are not required to find from the evidence that the stolen property belonged to D. C. Ray at the time it was stolen, before they can convict the defendant.    In the fourth instruction given to the jury, they are correctly told that if they believe from the evidence that the witness D. C. Ray had the exclusive possession and control of the cotton in question, then, and in that case, the said Ray is, for the purposes of this prosecution, in law, owner of said cotton.    Still, this last instruction did not cure the defect in the charge already stated.

Again, in the third subdivision of the charge, the jury are instructed as to the punishment for receiving or concealing stolen property, knowing it to have been stolen.    This portion of the charge we believe was calculated to mislead the jury, and cause them to believe that if the evidence satisfied them that defendant, Charles Williams, received or concealed the cotton which had been acquired by another, in such manner as that the acquisition comes within the meaning of the term "theft," knowing the same to have been so acquired, they would find the defendant guilty of theft. No portion of the charge of the court authorized the jury, in case they did not find the defendant guilty of the theft of the cotton, to find him guilty of receiving or concealing it, knowing it to have been stolen.

The judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*