| 29 | 157 |
| 59 | 255 |
| 29 | 157 |
| 62 | 244 |
| 29 | 157 |
| 73 | 578 |
| 29 | 157 |
| 74 | 362 |

## OSMOND S. GREEN *vs.* TOWN OF CANAAN.

The acceptance which is necessary to the establishment of a highway by dedication, is the act of the public in using it as a highway, not of the town in repairing, or in some other mode adopting it. [Per Storrs, C. J. and Hinman, J.; Ellsworth and Sanford, Js. dissenting.]

Except in the case of highways laid out by selectmen, which towns are expressly authorized by statute to accept, towns, as such, have nothing to do with the acceptance of highways.

Evidence therefore that a highway dedicated by the owners of the land is necessary to the public convenience and is used as a highway by the public, even in the absence of all evidence that the town has accepted the road, is admissible for the purpose of showing that the highway is an established one, which the town is bound by law to repair.

The force of such evidence must depend on the character and extent of the public use.

Railroad corporations have power, in connection with the owners of the fee, to dedicate for a public highway lands taken by them under their charters, where there is nothing in their charters to forbid it.

ACTION upon the statute, to recover for an injury sustained by reason of a defect in a highway. The defendants denied that the road in question was a public highway. On the trial

to the jury, on the general issue, the plaintiff introduced evidence to prove that the road in question was a highway by dedication, and did not claim that it had become a highway in any other manner. The defendants offered evidence to prove that the road led from an arch under the track of the Housatonic railroad to the depot of the railroad company at Falls Village in the town of Canaan, that it was constructed by the railroad company, and was located wholly upon the land of the company, and within the limits of their right of way, and had, ever since it was constructed, been maintained and repaired by the railroad company, and had never been maintained or repaired by the town of Canaan ; that, at the time the road was opened by the railroad company, it had no connection at its southerly end with any other highway in Canaan, but was built by the company for the sole purpose of accommodating their depot, there having been before no public way between the arch and the depot; and that the accident of which the plaintiff complained occurred on the road so made by the railroad company, about half way between the arch and the depot.

To prove that the road had been accepted by the town of Canaan, the plaintiff offered in evidence the report of the county commissioners for the county of Litchfield, laying out a highway in the town, which was resisted at the time by the town, containing a survey of a highway, leading from a point about two miles east of the railroad to the depot; which report had been accepted by the court and recorded at length in its records. In connection with the record the plaintiff offered evidence that the highway so laid out had been constructed and kept in repair by the town of Canaan ; that at its west end it connected with the road in question, and had become, at the time of the accident, the principal thoroughfare for travelers who had occasion to pass under the arch ; and that in getting from the highway so laid out to the arch, and from the arch to the highway, that portion of the road in question upon which the plaintiff was injured, was necessary for public convenience, and was generally used by the traveling public.

To all this evidence the defendants objected, but the court admitted it.

The defendants offered in evidence the charter of the Housatonic Railroad Company, for the purpose of showing that the railroad company had no power to apply their lands to any other than railroad purposes. The plaintiff offered evidence to prove, and claimed to have proved, that the land upon which the road in question was laid, had been appropriated to that use by the owners in fee, as well as by the railroad company. The defendants claimed and asked the court to charge the jury, that the railroad company had no right to dedicate, and could not dedicate, the land which they held under their charter, to the public as a highway, and that their acts in relation to the road did not amount in law to a dedication of it as a public highway. The defendants also requested the court to charge the jury that they could not be liable for injuries sustained through defects in the road, unless they had accepted the road as a public highway, and that public travel and use of itself was not sufficient evidence to prove an acceptance of the road on the part of the town. The court charged the jury as follows :—

Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. A common public road, originating in such an appropriation and acceptance, is a highway by dedication. The persons making the appropriation must be the owners in fee, or they must act by the authority or with the assent of such owners. No particular formality is necessary. The vital principle of dedication is the intention to dedicate, and when this is unequivocally manifested, the dedication, so far as the owner of the land is concerned, has been made. But before a town will be liable to maintain such a highway, or be subject to pay damages for injury to travelers for any deficiencies therein, there must be evidence that such town has accepted the highway. When so accepted and used by the public, in the manner intended, the dedication is complete, and will conclude all parties as effectually as if the highway had been laid out by the selectmen of a town and

properly accepted by the town. If therefore the jury shall find that the land on which the road in question is situated, had been intentionally appropriated to a public use for a highway, not only by the railroad company but also by the owners in fee, subject to the easement and other rights of the railroad company, and shall also find that the appropriation had been accepted by the town of Canaan, then the highway was at the time of the injury a public highway which the town was by law obliged to keep in repair. The general use of a highway by the inhabitants of a town, as a public highway, is evidence of acceptance by the town, but the force of this kind of evidence depends very much upon the character and extent of such use and the necessity of the highway. If it be used but by a few persons, and only for local purposes, it should have but little or no effect. But if it is used generally by all the inhabitants of the town, and is of public convenience, it would be entitled to greater consideration. The importance of this evidence and its force are for the determination of the jury, who must be reasonably satisfied that the town had accepted the road as a public highway.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial for errors in the rulings and charge of the court.

*Peet*, with whom was *Granger*, in support of the motion.

1. In order to make a town liable to keep in repair a highway, the town must have a right to enter upon the highway to repair it at all times, and must have full control over it. In this case the town had no such right. The highway was built upon the land of the railroad company for their own accommodation, and not only built by the company but it always has been repaired and controlled by them. The company have a right by their charter at any time to lay a track over the ground, and have never lost the right, because they have always possessed and controlled the ground for their own benefit. If the town has no right to control and repair the highway, it can not be made liable for accidents upon it.

2. The record of the laying out of the intersecting highway

offered in evidence by the plaintiff, was improperly admitted for the purpose for which it was offered, or for any other purpose. It furnished no evidence of acceptance on the part of the town, and its admission was calculated to have an improper influence upon the minds of the jury.

3. The court erred in refusing to instruct the jury that public travel and use, of itself, was not sufficient evidence to prove an acceptance of the road on the part of the town. The instruction given by the judge, that such use on the part of the public was evidence of acceptance on the part of the town, was also erroneous. The town could accept the road only by repairing it, or by adopting it in some other mode. In the absence of such an acceptance the town can not be liable for injuries received in consequence of defects in the highway. The rule is that user by the public, with the implied assent of the owner of the soil, is evidence of a dedication by the owner to the public use, but the acceptance of the road by the town, which is necessary to the liability of the town, must be shown by some act of the town, and the public use does not of itself even tend to prove it. Angell on Highways, §§ 157–161. 2 Greenl. Ev., § 662. *Commonwealth* v. *Charlestown,* 1 Pick., 180. *Commonwealth* v. *Newbury,* 2 id., 51. *Brimmer* v. *Proprietors of Long Wharf,* 5 id., 131. *Stedman* v. *Southbridge,* 17 id., 162. *Shepardson* v. *Colerain,* 13 Met., 55. *Wright* v. *Tukey,* 3 Cush., 290. *Smith* v. *Wendell,* 7 id., 498. *Irwin* v. *Dixon,* 9 How., 10.

4. The railroad company had no power to dedicate the land in question to the public as a highway. It took the land under its charter solely for railroad purposes, and could not apply it to any different purpose.

*Hubbard* and *Warner,* with whom was *Wheaton,* contra.

1. The report of the county commissioners laying out a highway in connection with that portion of the road in question upon which the plaintiff was injured, thereby inviting the public travel upon the latter road, not only tended to prove an acceptance on the part of the town, but was evidence of a decisive character. It showed clearly that the road in ques-

tion, by its connection with the road thus laid out, had become necessary to the public convenience. The two together became a continuous highway, used as such by the public and necessary to its convenience.

2. The railroad company had full power, in connection with the owners of the fee, to dedicate the land to the public use. There is nothing in their charter to forbid it. They had laid it out expressly for public use. And under the charge the jury has found that the owners of the fee have also dedicated their interest in it. *Smith* v. *Wendell*, 7 Cush., 498.

3. The defendants had no right to ask the court to charge the jury that public travel and use of itself was not sufficient evidence of acceptance, and thus withdraw from the consideration of the jury the laying out of the other road by the county commissioners ; but the instruction that the general use of a highway by the inhabitants of a town as a public highway was evidence of acceptance, depending for its force upon the character and extent of such use and the necessity of the particular highway, was clearly right. User is one of the modes by which a highway may be established. *King* v. *Inhabitants of Leake*, 5 Barn. & Ad., 469. *Curtiss* v. *Hoyt*, 19 Conn., 155. *Noyes* v. *Ward*, id., 250. *Livingston* v. *Mayor of N. York*, 8 Wend., 85. *Wyman* v. *Mayor of N. York*, 11 id., 487. *In re Furman Street*, 17 id., 661. *In re Thirty-second Street*, 19 id., 128. *Pearsall* v. *Post*, 20 id., 111. *Hobbs* v. *Lowell*, 19 Pick., 405. *Cincinnati* v. *White*, 6 Pet., 431. *Hunter* v. *Sandy Hill*, 6 Hill, 407.

HINMAN, J. We have seen nothing in the rulings of the superior court in this case that should entitle the defendants to a new trial. Some apprehension that the jury may have found for the plaintiff, and thus found that there was a public highway at the place of the accident, on evidence not quite sufficient for the purpose, has induced a more careful examination of the case than would otherwise have seemed necessary. But if there was any occasion for such apprehension, it is quite obvious that, on this motion, we can not correct the mistake.

And as this is not a motion for a new trial for a verdict against the evidence, it is not to be presumed that we have all the evidence before us, so as to enable us to come to any accurate or intelligent consideration of such a question, if it could be admitted that we have the power to examine it. The questions of law in the motion are neither numerous nor difficult. The great question in the case was, whether the accident resulted from the defendant's neglect to keep a railing on the side of the road where it occurred; and this of course involved the question whether there was a highway there which the town was bound to maintain. There was a traveled road there, but it never had been established as a highway in any statutory mode, and was only claimed to have become a highway by dedication. It was important, therefore, to prove, not only the giving up of the land for public use as a highway, but that the public had accepted it as such; and, as evidence tending to prove this, the plaintiff offered the record of the establishment by law of another highway which intersected the highway in question, and to the convenient use of which, for travelers passing along it to and from the railroad depot, the disputed highway was indispensable.

This evidence was objected to, and its admission by the court is the main ground on which a new trial is claimed. It appears from the record of the establishment of this highway thus offered in evidence, that the town of Canaan resisted it, and that, nothwithstanding such resistance, it was established by the commissioners and the court; and it is claimed to be repugnant to every principle of justice, that an act which the town resisted until resistance proved unavailing, should be used against the town, as tending to show its adoption and acceptance of another highway, only made necessary in consequence of the establishment of the highway thus resisted by the town. The fallacy of this argument consists in substituting the town for the public as the party which is supposed to act in accepting or adopting a highway dedicated to its use. It was at one time in England supposed that it was necessary for the inhabitants of the parish in which a highway was claimed to be established by dedication, to adopt or accept it

by repairing it, or in some other mode, and that otherwise the parish would not be bound to repair it. And perhaps this idea may have been followed in some of the states, where it has been held that towns, or other municipal bodies standing in the same situation as English parishes in respect to the repair of highways, must in some mode be shown to have adopted a highway established by dedication. But this has never been considered as the law in Connecticut, and the law in England was settled the other way in the case of *The King* v. *The Inhabitants of Leake,* (5 Barn. & Ad., 469.) And it seems quite obvious that towns, as such, can have no other interest in the establishment of highways than all other corporations. In common with them, and their own inhabitants and all the people of the state, they constitute the public, and the public is the body for whom alone highways are built and maintained. Except then in those specified cases where the statute has clothed the towns with power to act for the public in the acceptance of highways laid out by their selectmen, they have no more to do with such acceptance than counties or school districts. The duty thrown upon them to repair the highways, for which no other provision is made, gives them no such power. In this also they act as public agents, as they and the courts do in the cases specified in the statute in which they have power to accept highways laid out by selectmen or county commissioners. In all their proceedings in respect both to accepting and repairing highways, they act in conformity to specific requirements of the statute, and are therefore only acting legally when they conform to those requirements. They are bound to repair highways already established, but have no power to establish them by their repairs. No one would claim that by a direct vote, without a previous laying out by the selectmen, they could establish a highway, or that they could act upon a laying out by any other board than the selectmen ; and if they can not do this directly, it seems clear that it can not be done indirectly by repairing. It is true that the act of repairing may furnish evidence that there is a highway at the place, since it shows that it is used as such, and, in connection with travel upon it,

may be very satisfactory evidence upon the point. But neither travel nor repairing show any acceptance in form; they only show a use which, when connected with the act of dedication, indicates a necessity for the highway, which may be sufficient, if continued for a sufficient length of time, to raise a presumption that the public have accepted or adopted it as a highway.

We are aware that this acceptance is sometimes incorrectly spoken of as the act of the town. It is so spoken of in the charge to the jury in this case. But the ruling upon the question of evidence shows that the town was only spoken of as representing the public; and the whole case shows that if there was any party who could complain of this, it is not the defendants, and accordingly it is not made a question in the case.

If we are correct in what has been said, it follows from it that the act of the town in resisting the establishment of the highway, the record of which was received in evidence, was of no importance whatever as a qualification of the legal effect of its establishment and connection with the road claimed to have become a highway by dedication. Nor would its legal effect have been anywise different had the highway been laid out by the selectmen of Canaan, and accepted as thus laid out by the town, instead of its establishment by the commissioners and the court. It was not received in evidence as tending to prove any acknowledgment of the town that such a highway was needed, but for the purpose of showing that the travel upon it, or a portion of it, required the disputed highway in order to reach the depot to which both the roads led, and thus to show that the disputed highway was indispensable for the accommodation of a particular line of travel.

In this aspect, as tending to show the amount of travel that will be accommodated by a highway claimed to have been established by dedication, and thus to prove its usefulness and necessity, its connection with other roads must always be an important inquiry. It might not have been necessary to introduce the record of the establishment of this highway, but there could be no objection to it, and if it was a disputed ques-

tion whether there was such a highway or not the record would of course settle it.

The charge of the court in respect to the power of the railroad company, in connection with the owners of the soil, to dedicate the land to the public use, seems to us to be unexceptionable. The fact that the road was originally constructed by the company on its own land, and that its usefulness consisted very much in its accommodating those who had occasion to go to their depot, and that it thus tended to increase their business, no doubt went far to show that this was a private rather than a public road. But this of course was for the jury alone, and if they have given it less weight than we should have done, the court is not responsible for it. As a mere question of power in the company, we suppose that corporations have the same right to dedicate their lands to the public use as any other proprietors; unless, indeed, it is contrary to the provisions of their charters, or amounts to a breach of duty to their stockholders. We do not see therefore how the court could have given any other instructions on this point than such as were given.

The charge that the general use of a highway was evidence of acceptance of it as such, the force of which depended on the character and extent of the use and the necessity of it as a highway, was also correct. The law on this subject was fully examined in the late case of *Noyes* v. *Ward*, 19 Conn., 250, and the charge in this respect conforms to the current of decisions as shown by that case.

We are of opinion, therefore, that on none of the grounds on which it is claimed can a new trial be advised.

In this opinion STORRS, C. J., concurred.

ELLSWORTH, J. Judge Sanford and myself are constrained to differ somewhat from our brethren, upon what appears to us a most important principle of law laid down in this case at the circuit.

The Housatonic Railroad Company, having occasion for a short piece of road to and from their depot, in the town of

Canaan, opened one along by the side of their track, within the established limits of the road. They proceeded to make and finish it, and have ever since repaired and exercised exclusive control over it, except that it has been used freely by the public in going to and from the depot, and, lately, in going to and from a new highway leading into it.

The plaintiff, having suffered an injury on this road from the want of a railing, has brought suit against the town of Canaan, and recovered damages upon a principle of law laid down by the court which is without precedent, we think, in this country, and calculated to defeat our statutory regulations on the subject of highways.

We need not say any thing with regard to the dedication of land by individuals for highways, so far as it relates to the owner of the soil. Herein we think the views of the judge on the circuit are correct, and that he properly submitted the question of fact to the jury. Nor will we dwell on the admissibility of the record of the laying out of the new highway, which has been so much discussed by counsel. That record is the proper evidence of the laying out of the highway, if that fact was important, and perhaps of the necessity of the highway for public travel; and, if such was the purpose of its introduction, we do not dissent from the ruling of the judge in receiving it. But if the object was to show an acceptance by the town of the private road of the Housatonic Railroad Company, when they had resisted the laying out of that highway to the utmost, we must think the record of no relevancy for such a purpose, and that the entire proceeding makes more against the plaintiff than for him.

Nor do we mean to say that parol evidence of the existence and use of an ancient highway is inadmissible upon the issue whether there be a highway, or of the present use of a road by the public, as against the owner of the soil, if it is claimed to be one by dedication, for the owner may have so conducted as to be concluded on this question. But what we mean to say is this, that when an individual lays open a road through his own land, primarily for his own purposes, though those pur-

poses include public travel, and builds it, and repairs and exclusively controls it, as was claimed to be proved in this case, never having offered it to the town for their acceptance or recognition or notified them that he wished to surrender it to them, the town is not liable to pay damages which result from his neglect or omission, because the public make use of the road. If this be all there is in this case, it is our opinion that it is the Housatonic Railroad Company rather than the town of Canaan which is liable to the plaintiff for the injury he has suffered.

It is important to notice how the question in issue arose on the circuit. The defendants insisted, and had asked the court to instruct the jury, that under the circumstances I have now detailed, the mere use by the public of such a road in such a manner, was not enough to show that the road had been accepted by the town. The court refused so to instruct them, and left them to suppose that they might find, and ought if the travel had been general, that the town had ratified the dedication and accepted the road ; and, if we understand our brethren aright, they concur in this inference, while they do not require an acceptance by the town at all, leaving the liability of the town to rest on the public travel alone. Now, we ask, what sort of an acceptance is this, if any be necessary ? and whether this theory is not an abandonment of what has been hitherto received as established law in our courts, that the town must in such a case have accepted the road. Indeed, if mere travel is sufficient evidence of acceptance, how can an acceptance be prevented ? On this theory, if selectmen or commissioners, or a town itself by vote, (where it may do it,) have refused to lay out a highway, the applicant may go and lay it out himself; and if he can induce the people to make use of it, he will have a highway imposed upon the town in spite of all that the town may do.

In our cities, even though, as in the city of Hartford, there be an ordinance that no road shall be accepted which is less than forty feet wide, we shall have public highways of all widths and in all places. A speculator has only to open roads and allure people to make use of them, and the liability of the

city commences at once.    Hitherto it has been thought that
such roads must be accepted, but now this species of legislation
is to be transferred to the jury box ;  no acceptance by the city
council is necessary,  and the city instantly becomes liable for
injuries sustained in alleys and lanes and private roads never
accepted, repaired, or known by any public authority, if only
a jury are satisfied that they have been extensively used ; a
doctrine alike without foundation, unsafe and alarming.    In
England possibly it may be otherwise, for there they have no
system of highways as we have ; and yet even there this ques-
tion is not fully settled.    In the case of *Rex* v. *Parish of St.
Benedict,* 4 Barn. & Ald., 447, Bailey, J., says:—" I do not
accede to the doctrine that because there is a dedication of
the road by the owner of the soil, and the public use it, the
parish is therefore bound to repair.    I think there ought to be,
in addition to that, evidence of an acquiescence by the parish
in that dedication.    In the case of bridges, there always is
what is to be considered as an acquiescence by the county.
In the case of a parish, they have no power to prevent the
opening of the road or to obstruct the public use of it.    It
would be most unjust, if, by the public use of what was at first
a private road, the burden of repairing it could be removed
from the persons to whom the use of it was at first confined,
and cast upon the parish."    This reasoning is very satisfac-
tory to us, and the doctrine laid down in it most reasonable
and just.    We admit however that other judges in England
have expressed different views, and perhaps the law is different
there at this time.

In this state, and perhaps all the states, there is a statutory
system in relation to highways, wholly unlike any thing of the
kind in England.    We have in each town and county a domes-
tic tribunal, invested with exclusive and final authority, which
is specially charged, upon personal inspection, to see what
new highways are wanted, and to lay them out and establish
them.    But, if the plaintiff's theory is the true one, this is com-
paratively needless legislation ; for if an application for a new
highway is unsuccessful, the applicant may open the road him-
self, through his own land, and if he can induce the public to

make use of it, can throw it on the town, and force them to keep it in repair.

This question many years since came up in the supreme court of Massachusetts, in the case of *Hobbs* v. *Lowell*, 19 Pick., 405, where Shaw, Ch. J., remarks, in giving the opinion of the court:—" It is manifest there is very little analogy between the character, powers and duties of parishes in England and those of towns in this commonwealth. Almost the only point of resemblance is, that they are respectively bound to repair all highways within their limits, where other provision is not made by the law for the purpose. The great point of difference is, that in this commonwealth, towns have the power in a certain course of proceedings to lay out town ways, which are, in effect, public highways, for the support of which they are to be responsible. They are also recognized as parties in all proceedings for establishing new highways." The judges in that case it appears were not agreed, and passed over the question, placing their decision upon an actual acceptance proved by an overt act of the officers of the town, which acceptance the court held was necessary. Morton, J., combats at great length the whole doctrine of highways in that state by dedication, and he insists that the statute law points out the only mode in which highways can be established. Before the question arose again, the legislature passed an act declaring that no way dedicated to the public use should become chargeable upon any city or town, unless first laid out and established under the statute law. Whether Judge Morton, in the views which he expressed, carried the doctrine too far, we need not decide ; we certainly have no occasion to go to that extent in order to maintain any position we assume. There is one consideration however, in support of his view, which should not be overlooked, to wit, that the statute contemplates and requires that the laying out of all highways, whether by selectmen, commissioners or towns themselves, shall be recorded, that their limits may be defined and made apparent to the public. Cities and towns can never know the limits and boundaries of highways cast upon them by dedication. In Vermont, (in *Page* v. *Weathersfield*, 13 Verm., 424,) where

they have a system like ours, the court holds that individuals can not lay out a road and oblige the town to keep it in repair, and that to be a legal highway it must be officially laid out and established. So in New York, in *The City of Oswego* v. *The Oswego Canal Company*, 2 Seld., 257, *Badeau* v. *Mead*, 14 Barb., 328, and *Clements* v. *West Troy*, 16 id., 251, it is held that roads dedicated by individuals, but not accepted by the public authorities, are not public highways; and in the last case it was held that acceptance could only be made by instituting the proceedings prescribed by statute for laying out and opening highways. In Indiana, in *Indianapolis* v. *Mc Clure*, 2 Carter, 147, the rule seems to be nearly the same, and generally, if not universally, in this country, an acceptance of the road is made to turn upon some act of acceptance or at least some recognition of the road by a public functionary; as in *Hobbs* v. *Lowell*, it was the setting up a guide post, and certain things done supposed to be incompatible with the road being a private road; or, as in *Wright* v. *Tukey*, 3 Cush., 290, an appropriation of money for a street; or, as in *Blodget* v. *Royalton*, 14 Verm., 288, where the mere use of a road is not thought to be sufficient evidence of its acceptance. The English cases too show a similar doctrine on this point, for their courts seek for some overt act, some official recognition, from which to infer an acceptance. If now we are about to place roads by dedication upon the same footing with such roads in England, in disregard of our own peculiar system, we shall be constrained to seek for some such act or acts of recognition, or the legislature will ere long be called upon to enact a law similar to that in Massachusetts, or our cities and towns will be grievously burdened through accidents on roads of which they have little or no knowledge and over which they have assumed no control.

If our brethren are right in their theory, no city or town is safe without carefully watching all private roads however recently made, to learn how much public travel there is on them, and whether they have been abandoned to the public; an inquiry, too, to be conducted at their own risk. This is, I must think, a novel doctrine in this state, and if it is to be

acquiesced in, I insist that our cities and towns are entitled to some reasonable notice that such roads are thrown upon them before it becomes their duty to repair them.

The rule is well enough as against the person who has dedicated his road to the public, for he certainly has no ground of complaint; which was exactly the case of *Noyes* v. *Ward*, 19 Conn., 250. He is estopped. Having invited the public to use his road, he shall not question the existence of it when it is used. The present chief justice, who tried that case on the circuit, expressly puts this part of the case on that ground, and nothing took place on the trial of the case in this court which at all disparaged his view, but on the other hand this court fully affirmed it; and I do not perceive that that case touches the question now before us in any material particular. Nor has the case of *Cincinnati* v. *White*, 6 Peters, 439, and that class of cases, any more bearing upon the question. The chief justice, in the charge he gave the jury on the circuit in the case of *Noyes* v. *Ward*, was very explicit upon the manner in which highways may be acquired by dedication and adverse enjoyment. He says : " The mere use however by the public of land as highway, for any period short of fifteen years, would not be sufficient evidence of such a dedication, but if, in addition to the circumstance that the public had used land as and for a public highway, there is unequivocal proof that the owner of it intended to dedicate it to the public for that purpose, a less time than fifteen years will be sufficient." Mere use then by the public is not enough, and yet what is there more here, upon the claim of the defendants " that public use and travel was not sufficient evidence to prove an acceptance by the town."

The superior court held in the present case, and we think quite correctly, that before the town of Canaan could become liable to keep this road in repair, it must in some way have accepted it, just as is stated to be necessary in the books, and by the judges of the courts, in this country, if not in England. And, without such acceptance, can the town be prosecuted for not taking the road into its own hands and repairing it—a

Green *v.* Town of Canaan.

private road made for a special purpose, and in a place which the railroad company may wish sooner or later to occupy with the track of their road? We think not. The judge was right in his view of the law, but wrong in the application of it to the case before him. Our brethren avoid the effect of a want of acceptance of the road by the defendants, by denying the necessity of it in a road acquired by dedication, but of this we have already spoken and we need not add further. We hold that acceptance is necessary, and that until it is made by the city or town, or some of its officials having charge of the subject, the city or town can not be liable in damages for its defects. Entertaining these views, we can not concur in the judgment of our much respected associates.

In this opinion SANFORD, J., concurred.

New trial not advised.