## THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY *vs.* THE CITY OF NEW HAVEN.

*J* in 1835 deposited in the office of the town clerk of New Haven a map of certain streets and building lots, including a street called Myrtle street, and in 1840 made a quitclaim deed of all the streets to *T* in trust for the city of New Haven. In 1858 the city voted to accept a deed of the streets from *T*, who

soon after gave the city a quitclaim of all his interest as trustee in the same. In 1835, at the time of the deposit of the map, a railroad had been laid out through the tract one hundred feet wide, crossing Myrtle street, and the track was laid in 1836. In 1840, after *J* had made the trust deed to *T*, he quitclaimed to the railroad company the hundred feet taken by it through the tract. In 1852 the railroad company laid an additional track, and in 1859 another, one on each side of the track first laid, and the three tracks had been in constant use down to 1876. Down to that time Myrtle street had never been used as a public street, but its existence as a highway had been repeatedly recognized by *J* by reference to it in deeds of land in the vicinity. In that year the city attempted to open it as a public street, and the railroad company applied for an injunction. Held—

1.   That, assuming that *J* intended to dedicate the land for a public highway, yet that it could not become one without an acceptance by the public.

2.   That the acceptance of the deed of the street from the trustee by the city was not an acceptance of the highway by the public.

3.   That as it did not appear that the way was one of common convenience and necessity, and therefore beneficial to the public, an acceptance by the public would not be presumed.

4.   That if the city had acquired under the deed of the trustee any right to the place in question for a public street, it had lost the right by abandonment.

5.   That the railroad company having by its deed from *J* in 1840 acquired a title in fee, and the city having so long acquiesced in its claim of title, the land could now be taken for a public highway only by proceedings under the statute for laying out highways.

PETITION for an injunction; brought to the Superior Court. Facts found and case reserved for advice. The case is fully stated in the opinion.

*G. H. Watrous*, for the petitioners.

*S. L. Bronson*, for the respondents.

GRANGER, J.   This is a petition in chancery, praying for a perpetual injunction against the city of New Haven, restraining it from interfering with, or in any way interrupting, the petitioners in the occupancy of a certain tract of land lying within the city, and claimed by the city to be a part of Myrtle street.

The principal facts as found by the committee are, that prior to September 24th, 1835, the Hartford & New Haven Railroad was laid out one hundred feet wide across the land in dispute, and was located substantially where its first track was laid in 1836 and 1837. At that time Myrtle street had

no existence. On the 24th of September, 1835, N. and S. S. Jocelyn made and deposited in the town clerk's office in New Haven, a map, delineating thereon a large number of building lots and streets, and the railroad crossing now in dispute. On the 29th of May, 1840, after the railroad was constructed and in operation, the Jocelyns made and put on record a quitclaim deed of trust to Isaac Thompson of all the streets described on the map, including the locus in quo, "in trust to convey all said streets and squares and every part thereof to the city of New Haven, to be used as public highways, streets and squares, whenever said city will accept the same or any part thereof; and, until such time as said city shall accept the same, to permit and suffer the owners of land adjoining said streets and squares to use and occupy the same as and for public streets, highways and squares." On the 8th of August, 1840, the Jocelyns executed and delivered to the Hartford & New Haven Railroad Company a deed of the strip of land on which its road was located and built, by which deed the company took the fee in place of a mere easement. Between 1840 and 1845 the Jocelyns made deeds of land in the vicinity of the locus in quo, and in such deeds made reference to the premises in dispute by the name of Myrtle street. It does not appear that during this period there was any Myrtle street in fact, either east or west of East street. Between 1845 and 1853 several releasees of the Jocelyns made deeds of adjacent premises, and in such deeds referred to the locus in quo as a highway. During this period it does not appear that there was any Myrtle street in fact, or existing otherwise than on the map filed by the Jocelyns. In 1852 the railroad company laid down, across the premises in controversy, a track east of its first track, and in 1859 laid down another west of its main track. All these three tracks have been in constant use by the Hartford & New Haven Railroad Company, and by the petitioners, the New York, New Haven & Hartford Railroad Company, as its successors, since they were laid to the present time. In 1852 the New Haven & New London Railroad Company located on that part of the disputed premises situated between the tracks of the Hartford & New Haven

Railroad Company and East street, its repair shops, engine house, turn-table, and the necessary tracks leading thereto, and in 1854 or 1855 placed its freight house so that it covered a part of the land in dispute. From that time to the present the shops, tracks, &c., have been held and occupied exclusively for railroad purposes by the New Haven & New London Railroad Company and its successor, the Shore Line Railway, and the petitioners. There is not now, and never has been any open or visible extension of Myrtle street easterly of East street, or upon or over any part of the land in dispute, nor has the public used the premises in dispute for the purpose of travel sufficiently to make marks of a passway or traveled track, and the space between the railroad tracks has never been planked or filled; and the city of New Haven has never exercised any control over the premises in dispute, except that on the 27th of August, 1875, the board of road commissioners directed the petitioners to place a suitable fence along the walks adjoining the premises in dispute on East street, and the petitioners complied with the direction and erected a substantial board fence along the line of East street and across the premises in controversy where East street intersects the same. The city now claims that Myrtle street extends across East street at this point, and across the tracks of the petitioners easterly to Mill River, and threatens to tear down that portion of the board fence thus erected by the petitioners, which extends across and in front of the disputed premises, on the easterly line of East street. On the 16th of October, 1858, the city voted to accept a deed or conveyance from Thompson, of the streets, &c., and Thompson on the 18th of March, 1859, quitclaimed to the city all his interest as trustee in the property conveyed to him, including his interest in the locus in quo.

The question presented by and upon these facts is—whether Myrtle street extends from the easterly line of East street, across the land, tracks and premises claimed by the petitioners, and is a public street which the city is bound to maintain, and which it has the right to control from the easterly line of East street to Mill River.

That the Jocelyns intended to dedicate and did dedicate the locus in quo as a highway and public street might be conceded, and yet under the facts found we think it clear that it is not now, and was not at the time the petition was brought, a public street or highway, beyond the eastern line of East street. In the case of *Derby* v. *Alling*, 40 Conn., 436, SEYMOUR, J., in giving the opinion of the court, says:—"Public as well as private rights may be lost by unreasonable delay in asserting them. They may be lost by an abandonment of them by those interested in their enforcement. Such abandonment may be inferred from circumstances or may be presumed from long continued neglect." Applying this principle to the case before us, we think we might stop here, and say that the city, having for so long neglected to assert its claim to the locus in quo, ought to be held to have lost its right, if it ever had any, by abandonment.

But it is not necessary to rest the case upon this ground, there being another which we think clearly sustains the claim of the petitioners. If it be conceded that the Jocelyns dedicated this land to the public for the purposes of a highway or street, so far as they had power to do so, it does not by any means follow, under the facts found, that it was a highway or street over which the city had control at the time the petition was brought. Undoubtedly it was the intention of the Jocelyns to dedicate to the public all the streets designated on their map filed in the town clerk's office. But something more than their act is necessary in order to make the streets public streets and highways. There must be an acceptance of the land so dedicated on the part of some person or corporation that is bound to keep such streets in repair, or such a use by the public as amounts to an acceptance.

In the case of *Guthrie* v. *Town of New Haven*, 31 Conn., 308, BUTLER, J., says (page 320):—"The donation or dedication of land by the owner, for the purposes of a highway, may ordinarily be determined by his conduct and declarations with reasonable certainty, but the question what shall be sufficient proof of the acceptance by the unorganized public, who cannot by a majority, or as a whole, expressly accept, is

not without difficulty. In some of the states the power to accept has been conferred by special statute upon the local corporations who are charged with the burden of constructing and maintaining the necessary highways within their limits. In other states a like result has been reached and such acceptance required, in the absence of statutory provision, by judicial decision. But in this state we have no statutes conferring such authority, nor any judicial decisions recognizing a necessity for it. The whole matter of acceptance, as well as dedication, has been left to rest on the principles of the common law, with which it originated. These principles authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where it is shown to be of common convenience and necessity and therefore beneficial to them. For the purpose of showing that it is beneficial, an express acceptance by the town or other corporation within whose limits it is situate, and who are liable for its repair, is important, but the principal evidence of its beneficial character will be the actual use of it as a highway, without objection, by those who have occasion to use it for that purpose. *Green* v. *Town of Canaan*, 29 Conn., 157."

It appears from this case that the acceptance by the city of the streets and squares mentioned in the deed of the Jocelyns to Thompson, did not of itself constitute such streets legal highways, and did not impose upon the city the duty of keeping them in repair. The city merely became invested with the legal title, as trustee for the public, and if the public have never accepted the dedication by using the place as a highway or street, and if it is not now of common convenience and necessity, as it is not found to be, and, as the facts appear to indicate, never can be, it would seem clear that there is not now, and was not at the time the petition was brought, any highway or street over the locus in quo which the city has any right to control, or one in which it is in any manner interested, or which it is bound to maintain and repair.

In the case above cited the court hold that the town of New Haven, and not the city, was liable in damages for an accident

that happened to the party plaintiff, on one of the streets mentioned in the deed under which the city now claims. The acceptance by the city therefore of the deed from Thompson gives it no right to control this land in dispute as a highway or public street. The acceptance of it as such must have been by the public, and not the city of New Haven.

But it further appears that, before the deed from Thompson was accepted by the city, the land in dispute was sequestered by the petitioners for railroad purposes, and that for a period of nearly forty years the petitioners have used, occupied and claimed the same, both as having an easement therein and as owner in fee. The case shows then that, whatever the rights of the city or the public might have been at the time the Jocelyns filed their map, and made their deed to Thompson of the premises in question in trust for the city, the land has since 1840, a period of nearly forty years, been claimed and used by the petitioners as their own property in fee, under the deed then given them by the Jocelyns. The city and the public have acquiesced in this claim too long to now assert any right to the land in question as a street or highway. Myrtle street has now no existence beyond the easterly line of East street, and if public convenience and necessity require its extension further, the proper and legal steps must be taken to procure such extension. It cannot be claimed upon any of the grounds suggested by the respondents.

The Superior Court is therefore advised to render judgment for the petitioners, and make the injunction perpetual.

In this opinion the other judges concurred.