ERWIN D. HALL *vs.* THE CITY OF MERIDEN.

The charter of the city of Meriden provides for an "application for relief" to the Superior Court by any person aggrieved by any appraisal of damage or assessment for benefits by the city authorities in the laying out of any street or other public improvement. Held that the proceeding did not differ, in respect .to the principles governing it, from an appeal from such appraisal or assessment.

And held that upon such a proceeding the Superior Court was not in any manner controlled by the action of the city authorities in the matter, but could reduce the award of damages below or raise the assessment of benefits above the amounts fixed by them.

The acceptance by the public of a highway dedicated to it is in all ordinary cases by actual use.

While there may be in some cases a constructive acceptance of a portion of a highway by an actual use of another portion, yet such constructive acceptance can exist only in a. peculiar case, like that in *Alling* v. *Town of Derby*, 40 Conn., 410, where by reason of the formal character of the proceedings attending the dedication and designation of the street and acceptance by the town, and the fact that the street in question was a part of a net work of. dedicated streets, a special and unusual effect was given to such actual use of a portion of the street as was made by the public.

APPLICATION for relief from an assessment of damages in favor and of benefits against the applicant in the laying out of a street by the authorities of the city of Meriden; brought to the Superior Court in New Haven County, under the provisions of the city charter. The followings facts were found by a committee:—

In the spring of 1868 Kellogg and Rust owned an extensive tract of land in the outskirts of the city of Meriden, and about that time laid it out into building lots, with streets plotted across the tract, and made a map of the same and filed it in the town clerk's office in the town of Meriden. The principal street through this tract was Crown street, which was in the line of old Crown street, then and for years before a regularly worked street in Meriden. There was in 1868, however, no connection between the old and new Crown street, since Kellogg and Rust did not own all the land up to the southerly end of old Crown street, and the connection between old Crown street and new Crown street was not

made until the proceedings of the city were had, as hereafter set forth.

On October 15th, 1868, Kellogg and Rust sold and conveyed to the plaintiff certain building lots laid out on their map, described in the deed as follows: "North on land of grantors, 220 feet, more or less; east on contemplated extension of Veteran street, 97½ feet, more or less; south on land of the heirs of Enos H. Curtis, and west on contemplated extension of Crown street, embracing lots Nos. 27, 28, 43, 44 and 45, on plot of land, as surveyed by grantors, said lines and streets being also in accordance with said survey."

The proposed new Crown street was not a straight street, but turned to the west a short distance above the plaintiff's lots. Below the land plotted out into lots on the old map, the proposed new Crown street did not run upon land of Kellogg and Rust, but upon land of the heirs of Enos H. Curtis.

Between the spring of 1868 and December 26th, 1873, the proposed new Crown street down to the turn in the same was considerably built upon; it was also considerably traveled and was used as a public street, connection with the city being had through Grant and Colony streets.

Below the turn, and on the line of the proposed street as turned, prior to December 26th, 1873, there had been no buildings erected, nor had the proposed street been worked in this part of it, nor much traveled. But at the time the plaintiff bought his lots the proposed new Crown street below the turn had been staked out, and the trees cut out in the line of it, and substantially in that condition it remained down to the fall of 1872.

Some time prior to December 26th, 1873, efforts were made to connect the new Crown street with old Crown street, and it was also proposed that the new Crown street should have no turn in it, but be continued as a straight street. Accordingly when Kellogg and Rust sold lots Nos. 38 and 55 on the old map, in the latter part of 1872, they bounded the grantees on "the line of the contemplated extension of Crown

street, wherever said line shall be established by the lawful authorities."

I find that when Kellogg and Rust laid out their land into lots, and made and filed the map, they dedicated to public use all the lands reserved on the map for streets, and that so far as new Crown street was concerned, down to the turn in the same, it had been in fact, prior to December 26th, 1873, accepted by the public. If such partial acceptance of this portion of new Crown street was in law an acceptance of the whole street as laid out on the old map, then I find a legal acceptance of the whole street as laid out on the map down to the Curtis land. But I do not find any acceptance, in fact, by the public, of that portion of new Crown street commencing and extending southerly from the turn as indicated on the old map.

Prior to December 26th, 1873, there had been no action taken by the municipal authorities of the city concerning the proposed new Crown street. About that time proceedings were commenced in the common council of the city, to lay out a new street from the south terminus of old Crown street, embracing the street heretofore called new Crown street down to the turn, but ten feet wider and extending in a straight line across the west part of the plaintiff's lots. Such proceedings were had that on the 3d of January, 1874, the city ordered the laying out of the street, and referred the matter of assessing damages and benefits to the board of compensation. It was also ordered by the city "that when the board of compensation assess the benefits and damages on south Crown street, they include in their assessment of benefits the cost of working said street." The original report was duly accepted by the city on the 5th of October, 1874, and ordered to be recorded.

If, upon the foregoing facts, the line of the street, as laid out on the old map, from the turn southerly in front of the plaintiff's lots, was on and prior to December 26th, 1873, a legal highway, then I find that the plaintiff was damaged by the laying out of the new street by the city authorities, over and above his benefits, the sum of five hundred dollars. But

if, upon such facts, the line of street as laid out on the old map, in front of the plaintiff's lots and up to the turn, was not on and prior to that time a legal highway, then I find that the damages and benefits to the plaintiff by the laying out of the street by the city were equal.

This estimate of damages and benefits is made as of the time when the street was laid out by the city. The estimates would have been the same if made as of the time of trial before the committee.

The plaintiff remonstrated against the acceptance of the report on the following grounds:—

' 1st. That the report does not find in full and specifically all the facts that were proved with reference to the action of the public in regard to said new Crown street below the turn.

2d. That it does find enough facts to show that the street was in fact accepted by the public below the turn, and then proceeds to decide as a question of law that it was not accepted in fact.

3d. That the report in one alternative reduces the finding of the board of compensation, whereas in law it cannot be done.

The court (*Hovey, J.,*) overruled the remonstrance and accepted the report of the committee and rendered judgment in accordance with it, that the damages and benefits to the plaintiff from the alteration and extension of the street at the time of the re-assessment of the same by the committee were equal, and that the city of Meriden recover of him its costs.

The plaintiff brought the record before this court by a motion in error.

*O. H. Platt,* for the plaintiff in error.

*First.* The Superior Court had no power to take away from the applicant the $300 already awarded him by the city. This is not an appeal, strictly speaking; it is a prayer for relief, based upon the allegation that the damages awarded him were insufficient. That it does not bring up and was not intended to bring up the question whether the damages

were too much must be obvious from a consideration of the circumstances under which damages were originally allowed. The city takes the land, and the city itself says what damages the owner shall receive. In the first instance he has no impartial tribunal before which he can try the question. The board of compensation are the officers and agents of the city. As such they hear the case, fix the damages, and make report to the common council. The council may reject the report, and may re-commit the matter to the board of compensation with instructions to reduce the amount, and its final acceptance of the report is the act of the city itself. From the very nature of the case, it cannot appeal from or review that decision. If it subsequently concludes that the damages are more than should have been awarded, it has a perfect remedy in its right at any time before opening and working the street to rescind its proceedings and commence *de novo*. By every consideration of justice it is precluded from questioning in this proceeding the propriety of the damages fixed by itself. By like considerations the land owner is entitled to inquire in an impartial tribunal whether the damages allowed him ought not to be greater. To prevent such an inquiry, or to permit the inquiry whether they were not too large, would be a great wrong. It is plain from the language of the statute also, that no reduction of the damages by the Superior Court is contemplated. It is the party "who shall feel aggrieved" for whose benefit the act is passed. He "may make written application for relief" to the term "next after the doing of the act by which he claims to be aggrieved." The court may "inquire into the allegations" of the application (which are, of course, that the damages are greater than allowed by the city) "and re-assess said damages," "and if said damages are increased," award costs against the city; "and if the damages are not increased," award costs against the applicant. Nothing is said in the whole section from which it can be inferred that a reduction of damages is contemplated or permitted.

*Second.* Upon the report of the committee the applicant is entitled to $500 damages. Two questions are left by the

committee to the decision of the court.—1st. Upon all the
facts found by the committee, was the street in front of the
applicant's lots a legal highway on the 26th of December,
1873 ?—2d. The committee having found an actual acceptance
of all that portion of the street lying north of the turn, is
the acceptance of the whole street to be therefrom inferred
as matter of law ?—1. It is uncertain what the committee
meant by the phrase "legal highway." The legal right of
the applicant to use it in going to his lot, the legal right of
other lot-owners below the turn, and the legal right of all
other persons having occasion to go to those lots for any
purpose, cannot be questioned. The dedication was to the
public and was complete and irrevocable. True, it was what
the books call an incipient dedication, which required public
use to so far complete it that the city should be bound to
repair the street or liable for accidents thereon. In every
sense except as to this liability it was a legal highway. The
liability of the city to repair could in no way seriously affect
the value of the applicant's land, and it may fairly be con-
tended that the phrase "legal highway" should be construed
to mean only such a highway as gave the applicant a legal
right of access to his land. But assuming that the commit-
tee meant a highway which the city was bound to repair,
(and the language used must of necessity have such construc-
tion,) we claim that, upon the facts found, such a highway
did exist in front of the applicant's lots below the turn as
well as above it. No question arises as to dedication. The
only question is as to whether the gift had been accepted by
the public, and it is submitted that very much less evidence
of use will suffice to prove an acceptance of the gift than
might be necessary in a case where the dedication was to be
presumed from the use. The street was dedicated as a whole.
It was a gift, and the larger part of it had been so used that
there was no question as to the acceptance of that portion of
the gift. In the absence of any fact tending to show that
the public intended to use a part and reject the remainder, it
must be conclusively presumed that, in the use the public
actually did make of the gift, they accepted it in the same

way it had been given—as a whole. Using so much of the
street as the committee finds to have been accepted, clearly
indicates the intention of the public to use the whole. If
only a house or two had been built near Grant street, and
the actual acceptance found had been confined to a few rods
at that end, the question might be more difficult. Suppose a
house had been built half way from the turn to the Curtis
land, and the travel thereto had been such as to compel the
finding of an acceptance to that point, would it then be con-
tended that the portion from such house to the Curtis land
had not been accepted? There were several houses on the
street at the time in question, and it is fair to presume that
building had commenced at Grant street, and gradually
extended south, and that travel kept pace with the building.
Are partial acceptances of the street to be found in such
case? Is the acceptance of a street by piecemeal, or as a
whole, to be inferred? The facts found as clearly show that
the whole street was beneficial and convenient as that any
part of it was. It was located in a city, opened through
unoccupied land to afford an opportunity for building. One
portion was as well adapted to that purpose as another. The
applicant bought his lot soon after its dedication. It is
apparent that lots on the street were purchased and held for
building, and not for speculation. No barrier or natural
obstacle was in the way of using all the land for building
purposes, or for a highway. It would seem that the beneficial
character of the street in front of the applicant's lots is too
plainly shown to admit of doubt. The street had been occu-
pied as rapidly and as fully as could be reasonably expected.
No one expects streets dedicated in the manner and under
the circumstances of this street to be immediately worked
and side-walked throughout their entire length; all that is
required to show acceptance of such a street is that its occu-
pation and use shall be the natural, common and reasonable
use of such a street, increasing as the same is built upon.
And when the use is shown to have been as full and complete
as could have been fairly anticipated, the acceptance should
be conclusively presumed. It will be observed that certain

things had been done in front of the applicant's lot, going to show an acceptance; and these facts are not to be considered as standing alone, but are to be taken in connection with what had been done in other portions of the street. The street in front of his lots had been staked out, and the trees cut down, at the time he bought his lots. There was then a visible street in front of his land. The committee finds that the street had not been worked in this part of it, *nor much traveled,* which is equivalent to finding that it had to some extent been traveled. Why should the street in front of the applicant's lots have been traveled at all, if the public intended to confine its use to the portion above the turn? Manifestly the street in front of his lots had been used and traveled whenever occasion required, but as it had not been built upon, there was not so much travel as in those portions where buildings had been erected. It will be noticed also that the city surveyor, in making his map, recognized it as a street with well defined and well known boundaries. The board of compensation and the common council, the agents of the city, and the city itself, recognized it as a highway to the extent certainly that it afforded free access to the applicant's lots, when his damages were fixed at $300. The law of Connecticut is well settled, and is stated by BUTLER, J., in *Guthrie* v. *New Haven,* 31 Conn., 321. "These principles authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where it is shown to be of common convenience and necessity and therefore beneficial to them. For the purpose of showing that it is beneficial, an express acceptance by the town or other corporation within whose limits it is situated, and who are liable for its repair, the reparation of it by the officers of such corporation, or a tacit acquiescence in the open public use of it, are important; and so are the acts of individuals, such as giving it a name by which it becomes generally known, recognizing it upon maps and in directions, using it as a descriptive boundary in deeds of the adjoining land, or as a reference for locality in advertisements of property, &c., and any other acts which recognize its usefulness, and tend to show an approval of the

gift by the members of the community immediately cognizant of it; but the principal evidence of its beneficial character will be the actual use of it as a highway, without objection, by those who have occasion to use it for that purpose." Now applying that law to the facts of this case, the acceptance of the whole street is most clearly shown. That it was when dedicated as beneficial in one part as another and so continued, that a name had been given it by which it was generally known, that it was recognized upon maps, used as a descriptive boundary in deeds of adjoining land, used throughout its whole extent to a greater or less degree as fully as might be reasonably expected if accepted as a whole, or in other words actually used as a highway without objection by those who had occasion to use it for that purpose, is clearly established. The only fact lacking is, that it had not been worked in front of the applicant's lots, but this is not essential. It is not found that it had been worked in any part. Like all such streets, it had worked itself.

2. All that has been adduced to show that, upon the facts found, the street in front of the applicant's lots had become and was a legal highway, is pertinent to the question whether the partial acceptance found as a fact by the committee was in law an acceptance of the whole street, as laid out on the old map. It is not contended that in every instance where a street has been dedicated by the land-owner to public use, and there has been such a use by the public of a part that no question can be made as to the acceptance of that part, it follows, as a matter of law, that the acceptance covers the whole street. Myrtle street in controversy in *N. York, N. Haven & Hartford R. R. Co.* v. *City of New Haven*, 46 Conn., 257, seems to have been an instance where a part of the dedicated street became a highway and the remainder did not. The case at bar, however, is entirely different from that. We know of no case expressly in point. Each street must stand by itself. And the court in determining whether in a given case such a use as leaves no doubt of an acceptance of a part necessarily implies an acceptance of the whole, must look at the surrounding circumstances—must consider

the circumstances of its dedication; whether located in the city or in an unsettled country; whether made with reference to supplying building sites or to afford communication from place to place; the length of the whole street in connection with the length of the part certainly accepted; whether any natural obstacles interpose to prevent its use as a whole; whether any attempt has been made to revoke a portion of the gift, or there has been an occupation of a part of the street inconsistent with its public use; whether the street as a whole has been occupied and used as rapidly and fully as could reasonably be expected under the circumstances; the reason for its use having been greater or more complete in one part than another; with other circumstances which naturally suggest themselves. The presumption is that, unless some prominent fact exists going to show that a partial acceptance was intended, a full acceptance coinciding with the dedication must be presumed. *Hamlin* v. *City of Norwich*, 40 Conn., 13; *Derby* v. *Alling*, id., 410. If a case can ever occur in which the undoubted acceptance of the greater portion of a dedicated street legally implies the acceptance of the whole, such acceptance must be found in this case.

*R. Hicks*, for the defendant in error.

Loomis, J. The first question made in this case is, whether, under the charter of the city of Meriden, damages assessed by the city authorities in favor of a party whose land is taken for a city street, can be reduced upon the party's application to the Superior Court for relief. In the present case the plaintiff's damages for land taken were assessed by the board of compensation at three hundred dollars. Upon his application for relief the committee to whom the case was referred by the Superior Court, found, subject to a certain legal question to be hereafter considered, "that the damages and benefits to the plaintiff by the laying out of the street were equal."

The plaintiff contends that the Superior Court had no power to reduce the amount of damages awarded him by the

board of compensation; that it could only raise them, or leave them to stand as they were. In support of this claim the plaintiff relies, first, on the designation which the charter gives to the proceeding—that of an "application for relief," which he contends makes it differ from an ordinary appeal from such assessments; and, second, on a later provision of the same section of the charter, which provides that "if said damages are increased or said assessment of benefits is reduced," the costs shall be paid by the city, but "if the damages are not increased or assessment for benefits not reduced," the costs shall be paid by the applicant; there being no reference to, and apparently no consideration of, the case of a reduction of the damages awarded or an increase of the assessment for benefits.

This argument is not without a considerable show of reason, but we are satisfied that it ought not to prevail. The section in question in explicit terms gives the Superior Court power, on such an application, "to re-assess said damages or benefits, and give judgment accordingly." This is the only clause of the section which relates to the power given to the court in the matter, and it is precisely this power which we are endeavoring to ascertain. Of course the whole section is to be taken together in determining the meaning of any particular clause in it, and especially its meaning as a whole; but we think this clause, which expressly states what is the power and duty of the court in the matter, is the predominating one in determining the meaning of the whole. The court in this case has done only the precise thing which the charter in express terms gives it power to do.

But if we were left in serious doubt by this section of the charter, we should find aid in interpreting it from the charters of the other cities of the state. The universal rule in giving power to cities to lay out streets and assess the damages and benefits therefor, is to provide for some mode of review of the action of the city authorities in making such assessments. The proceeding in most cases is called an appeal, sometimes a complaint, in two cases an application for a re-estimate of damages and benefits, in a single other

case, as here, an application for relief; but in every case express power is given to the tribunal before which the case is carried to "re-assess" the damages and benefits; while in nearly every case there is the same provision as here with regard to the allowance of costs against the city or the applicant, according as the damages are increased or not, or the benefits reduced or not. Now it can not be that the legislature intended a totally different rule of procedure in the two cases where the proceeding is called "an application for relief," from that which is to be followed in the others. It is in every case in effect an appeal from a lower tribunal to a higher one, and must have the ordinary incident of an appeal, in its carrying up the subject of appeal for a *de novo* consideration and judgment, unaffected in any manner by the adjudication below.

This is the only reasonable view of the matter. A rule that should limit the higher tribunal in the exercise of its judgment would work in many cases very inconveniently. Suppose several parties, perhaps all the parties interested, appeal from assessments of damages in their favor as too low, and from assessments of benefits against them as too high. The total of assessments is fixed, as a general rule, with reference to the total cost of the improvement, which includes the damages to be paid. Now if all appeal, or a large number, it requires a re-adjustment of the assessments between the different parties. An addition to the damages of all would require a larger assessment of benefits; while if the total is not increased, the increase of damages to some would require the reducing of the damages of others; as would also the reducing of the assessment of benefits in favor of some require an increase of the assessment against others. This re-adjustment of the assessments could not be made if the tribunal had no power to reduce an award of damages or increase an assessment for benefits. And yet this power to re-adjust the assessments is one that is expressly given by some of the city charters in connection with the power given on appeals to re-assess, and is certainly to be regarded as given by implication in all cases where there are

several appeals from assessments made in the same matter, pending before the court at the same time.

We entertain no doubt of the power of the Superior Court in the present case to adjudge the damage sustained by the plaintiff to be balanced by the benefits received, although the city authorities had awarded him three hundred dollars as damages above his benefits.

The next question made in the case is, whether the acceptance in fact of a part of the new street by the public constitutes in law an acceptance of the whole street as laid out and opened. Upon this point we are unable to entertain a doubt. The acceptance of a street by the public is always one of fact, the law merely contributing its definition of the term. While the acceptance covers what is incidental to the street, there is yet properly no legally constructive acceptance, unless in a peculiar case which we will hereinafter consider. Thus the actual use of a street laid out eighty feet wide would be an acceptance of the street as of that width, while the same amount of use of a street laid out only forty feet wide, would be an acceptance of it as only of that width. In each of these cases the public by its use has accepted the street, but has accepted it as it was dedicated or as the use found it. But this is not so much by operation of law, as by operation of the actual use as a fact. There is no room for such an operation of the use upon a portion of an opened street that extends entirely beyond all actual use on the part of the public. It will be seen at once upon a consideration of the matter that any such rule would be one very difficult of practical application. Thus, a street is laid out by private land-owners in the suburbs of a growing city extending a mile out into the country. We will suppose it to be cleared of trees and fences, and perhaps marked by visible monuments, so as to have been opened for a street, as in the present case, but also, as here, not worked. Now the occupancy of the street by houses, and the use of it by the public in connection with the houses, would begin at the end next the city and extend very gradually outward, making perhaps a very clear acceptance of the street for a quarter of a mile,

while no use whatever is made of the street beyond. Can it be that this use so clearly limited and defined in extent can constitute a use, and by such constructive use an acceptance, of the part of the new street that is most remote from the city? If it could operate to make an acceptance of that remote part of the street, why not of a still remoter part, perhaps a mile further out, if the street had been laid out for two miles instead of one? And if it could not operate to accept a part of the street so remote, as we think it very clear that it could not, where shall the line be drawn? We see that we encounter a practical difficulty that is very serious. There is only one rule to apply in such a case, and that is the rule of actual use. Where the actual use stops there the acceptance stops, with only the qualification before suggested, that such use will take in whatever may be regarded as properly incident to it. Under this rule the use may cover in some cases a little more length of road than has been literally driven or passed over by the public. Thus, the remotest house on the new street may have been constantly traveled up to and from, by persons and vehicles, such travel in fact extending only to the gate in front of the house, while the road as opened may extend two or three rods beyond. In such a case the road may be regarded as accepted for these few rods, but not by operation of law but only as incidental to the actual use.

In the case of *Town of Derby* v. *Alling*, 40 Conn., 410, the land for a number of village streets was conveyed by the proprietors of a tract of land to the town of Derby, to be used "for public streets and highways only," with a designation of them upon a map referred to in the deed. The town had previously passed a vote declaring these streets highways on condition that they should thus be conveyed to the town. This court held that the town thus became a trustee of the land for the purpose contemplated, and that the grant operated as a dedication of the streets to the public, but that, notwithstanding the formal acceptance of the grant by the town, it was necessary that there should also be an acceptance by the public. It is however held that the acceptance

by the public, by its actual use of a portion of a street, was to be regarded as an acceptance of the street in its entirety, applying to the case the doctrine of a constructive acceptance. The court however put this expressly and wholly upon the ground that the street had been conveyed to the town as a whole, and was held by the town for the public acceptance as a whole, so that that acceptance was to be regarded as an acceptance not of a part but of the whole; such acceptance of the whole being a carrying into effect of the manifest intent of the grantors and of those for whose benefit the grant was made. It was also an incident of that case that the entire street as to which the question arose, was a part of a net work of streets, and was connected by the portion not used with a cross street to which it furnished access, the non-use being wholly owing to the steepness of a hill at that point, which made it necessary that this part of the street should be graded before it could be used. The court held the dedication by the grant to be irrevocable, making it entirely unlike the case of an ordinary dedication, which is revocable until the public have accepted it, and to the full length of which on paper, or in the intent of the party dedicating it, the actual use and so acceptance by the public has no reference. If a highway is fenced and worked by a party dedicating it to the public, and then by a fence across it the public are debarred from the use of a considerable portion of it, it would not be contended that the use of the open portion would constitute an acceptance of the part from which the public was debarred; and yet the non-use by the public of the part from which it was excluded would not be so decisive evidence that the public do not want it, and so that it is not of common convenience and necessity, as would the same non-use if the public was not thus excluded, as in this case the non-use would result from the actual preference of the public in the matter and not from compulsion.

While therefore we would not hold that there may not be a constructive acceptance of one portion of a highway by an actual use and acceptance of another portion, yet we think such constructive acceptance can exist only in a peculiar case

like that in *Town of Derby* v. *Alling*, where by reason of the formal character of the proceedings attending the dedication and designation of the streets and acceptance by the town, and the fact that the street as to which the question arises is a part of a net work of streets, a special and unusual effect is to be given to such actual use of a portion of the streets as is made by the public.

In *Guthrie* v. *Town of New Haven*, 31 Conn., 308, the court consider the general principles governing the matter of the dedication and acceptance of highways, and say (p. 321,) that "an acceptance by the public is presumed where the highway is shown to be of common convenience and necessity and therefore beneficial to them," and that "the principal evidence of its beneficial character will be the *actual use* of it as a highway, without objection, by those who have occasion to use it for that purpose." The same principle is laid down in *Green* v. *Town of Canaan*, 29 Conn., 157. And in the recent case of *N. York, N. Haven & Hartford R. R. Co.* v. *City of New Haven*, 46 Conn., 257, the court held that one of several streets embraced in an original dedication and quitclaimed by the owner of the land to a trustee for the city and afterwards by the trustee to the city, with a reference in the deeds to a map on which the streets were laid down, did not become a public highway without an actual use by the public, even though the other streets on the map were accepted by such use—and nothwithstanding a vote of the city to accept the conveyance of the streets.

We can not entertain any doubt that the actual use and acceptance by the public of the part of the highway in question can not be regarded as in law an acceptance of the part not used by the public.

There is no error in the judgment complained of.

In this opinion the other judges concurred.